Frank OLLE, Jr.; Automatic Press Corporation; and James W. Cato, Plaintiffs–Appellees,

v.

The HENRY & WRIGHT CORPORATION, Defendant–Appellant.

Nos. 89–3532, 89–3615.

United States Court of Appeals, Sixth Circuit.

Argued March 15, 1990.

Decided Aug. 9, 1990.

Rehearing Denied Sept. 10, 1990.

John J. Sheehan, Sheehan & Sheehan, Cleveland, Ohio, for plaintiff-appellee Frank Olle, Jr.

Nicholas Phillips (argued), Stewart S. Wilson, North Royalton, Ohio, for plaintiffs-appellees Automatic Press Corp. and James W. Cato.

William D. Beyer, Kathleen M. Dugan, Wuliger, Fadel & Beyer, Roger L. Kleinman (argued), Burke, Haber & Berick, Cleveland, Ohio, for defendant-appellant Henry & Wright Corp.

Saul Eisen, Cleveland, Ohio, pro se.

Before WELLFORD and NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.

WELLFORD, Circuit Judge.

In an unpublished opinion, dated December 10, 1987, in this same controversy, we held that "the District Court should have remanded the case to the Bankruptcy Court for detailed findings of fact and conclusions of law under Rule 52, F.R.Civ.P." *See In re The Henry & Wright Corp.*, 835 F.2d 879 (6th Cir.1987). We refer to this opinion and reiterate a portion to set out the essential background of this case:

On November 8, 1982, the Trustee in bankruptcy [of Henry & Wright Corporation (H & W1)] filed with the Bankruptcy Court a Complaint to Sell Personal Property. The property which was to be sold included "inventory, supplies, equipment, engineering plans and documents, and good will and trade name" of H & W1. A liquidation sale was held on December 14, 1982. Press Services, Inc., [PSI] made a bulk bid of $25,000, which was accepted. The Trustee reported to the Bankruptcy Court that no bids were made for H & W1's good will and trade name. The Trustee requested that the Bankruptcy Court issue an order confirming the sale and abandoning the good will and trade name. On December 16, 1982, the Bankruptcy Court entered the requested order.

[PSI] used the assets it had purchased at the liquidation sale to form a new Henry & Wright Corporation (H & W2). A group of former officers and employees of H & W1 formed Automative [sic] Press Corporation (APC), which engages in work similar to that formerly engaged in by H & W1 and currently engaged in by H & W2.

In November 1984, H & W2 filed suit in District Court against APC and its officers. H & W2 stated in its complaint that it had purchased all of the assets, including the good will and trade name, of H & W1. The complaint charged APC with, among other things, tortious interference with good will and infringement of trade name. APC's defense is substantially based on the Bankruptcy Court's Order Confirming Sale, which ordered that the good will and trade name be abandoned.

In July 1985, [PSI] filed with the Bankruptcy Court a motion to correct the Order Confirming Sale. The motion contained the affidavit of the auctioneer who conducted the liquidation sale. The auctioneer stated that the good will and trade name had been sold to [PSI] along with the other assets.

Frank Olle, who is an officer of APC, moved for leave to intervene, arguing that the Order Confirming Sale affected his rights in the good will and trade name. Olle's motion to intervene was granted. The Bankruptcy Court denied [PSI]'s motion, the Bankruptcy Court holding that [PSI] had no standing because it was not a party to the original bankruptcy case.

In September 1985, the Trustee filed an Application for Instructions with the Bankruptcy Court. Relying on the affidavit of the auctioneer, the Trustee requested instructions as to the appropriateness of filing an Amended Report of Sale....

After a hearing, the Bankruptcy Court instructed the Trustee to file an Amended Report of Sale. The Trustee filed an Amended Report of Sale which indicated that [PSI] bought all of H & W1's assets, including the good will and trade name. The Bankruptcy Court then entered an Amended Order Confirming Sale *Nunc Pro Tunc* to that effect....

....

The District Court held that the Bankruptcy Court was without jurisdiction to enter the Amended Order. According to the District Court, the original Order Confirming Sale could only be corrected under Fed.R.Civ.P. 60. The District Court held that the mistake necessitating amendment was a substantive mistake, which Rule 60(b)(1) provides can only be corrected within one year of the mistake. Because the Amended Order was entered well over one year after the original Order, the District Court found that the Bankruptcy Court was without jurisdiction.

This present appeal involves proceedings under Chapter 7 of the Bankruptcy Code

for liquidation of The Henry & Wright Corporation (H & W1), an Ohio corporation which had previously filed a Chapter 11 bankruptcy petition. As a part of the liquidation process, the trustee filed a complaint on November 8, 1982, to sell the assets of H & W1. The trustee retained the services of an appraiser and appointed Rosen & Company as auctioneer for the sale of the personal property of H & W1. At an auction held on December 14, 1982, PSI of South Carolina made a bid of $25,000. The auctioneer reported this to the trustee who, in turn, reported to the court that the tangible assets of H & W1 were sold for $25,000, but that no bids were made for the good will and trade name. The trustee requested an order confirming the sale and abandoning the good will and trade name of H & W1. PSI transferred the assets of H & W1 to a related South Carolina corporation, H & W2.[1] Frank Olle, Jr. and James Cato, former employees of H & W1, subsequently formed a new corporation, APC, to engage in similar work.

H & W2 stated in its 1984 complaint that it had purchased all of the assets, including the good will and trade name, of H & W1. Olle, Cato, and APC based a substantial part of their defense on the bankruptcy court's order in which the trade name and good will of H & W1 were declared abandoned.

In the 1985 application for instructions, the trustee reported that: (1) his prior report of sale was incorrect when it reported that no bids were received on the good will and trade name of H & W1; (2) the good will and trade name had in fact been sold at the auction as part of the package of all assets; and (3) the bankruptcy court's order of December 1982 confirming the sale was incorrect when it ordered the trade name and good will of H & W1 abandoned.

In 1985, the bankruptcy court held a hearing regarding the trustee's application for instructions. The auctioneer, Stanley Rosen, was the only witness to appear at the hearing.[2] H & W1, Olle, APC, and Cato were all represented by counsel at the hearing. The district court concluded:

> Fed.R.Civ.P. 60(b) provides a reasonable and adequate procedure for parties to correct substantive errors in court judgments. If there was an error in the Bankruptcy Court's original order, all those with an interest in the matter had a year in which to have it corrected. Their failure to seek a correction until several years later does not permit them to recast their claim as one for the correction of a clerical rather than a substantive error. The time to correct a substantive error in the Bankruptcy Court's original order passed long ago.

On our subsequent remand to the bankruptcy court, the case was reassigned to Judge Baxter because the original bankruptcy judge, John Ray, had died during the pendency of the appeal. H & W2 filed a motion to intervene in the bankruptcy court proceeding and to be permitted to participate in a scheduled hearing. Judge Baxter denied this motion and thereafter H & W2 filed a motion to reconsider. The bankruptcy court eventually granted H & W2's motion to reconsider and H & W2's motion to intervene. At the hearing, Judge Baxter permitted only the auctioneer to testify and only the trustee to question the witness. Thereafter, Judge Baxter issued findings of fact and conclusions of law.

After an appeal by H & W2, District Court Judge Krenzler issued a memorandum opinion vacating the bankruptcy court's order, reinstating the original order, and reaffirming his earlier decision that the bankruptcy court was without jurisdiction to amend an alleged "substantive" error in the 1982 order of sale.

H & W2 appeals for a second time.

## STANDING TO APPEAL

■ Plaintiffs, Olle, APC, and Cato, contend that H & W2 has no standing because the bankruptcy court in August 1985 ruled

---

1. There is no other relationship between H & W1 and H & W2.

2. No record can be found of the October 1985 hearing. No tape was made and no court reporter was present to the best of this court's knowledge.

that PSI and H & W2 had no standing to file a motion to correct the alleged error in the order confirming sale. Plaintiffs assert that because neither PSI nor H & W2 appealed this order denying their motion and did not seek leave to intervene in the 1985 proceedings, H & W2 has no standing to maintain this appeal. H & W2 argues that since the trustee filed an application for instructions in 1985, several days before H & W2's time to appeal had lapsed, there was no need to pursue an independent appeal.[3]

When the plaintiffs appealed the bankruptcy court's amended order, the district court consolidated this appeal with District Court Case No. C84–3717, in which H & W2 was the plaintiff. This consolidation, entered on January 24, 1986, appears to give H & W2 standing to brief and argue the issues in this case.

On February 16, 1989, H & W2 officially sought leave to intervene in the proceedings before the bankruptcy court. On March 8, 1989, the bankruptcy court granted H & W2's motion to intervene. H & W2, as an intervenor, became a party for all purposes. *See District of Columbia v. Merit Sys. Protection Bd.*, 762 F.2d 129, 132 (D.C.Cir.1985). Our 1987 remand order anticipated that the bankruptcy court had discretion to take any action necessary to develop its findings of fact and conclusions of law. *See In re Vekco, Inc.*, 792 F.2d 744, 745 (8th Cir.1986). We, therefore, hold that H & W2 has standing to maintain the present appeal.

## WAS THERE AN APPEALABLE ORDER?

■ Plaintiffs assert that the bankruptcy court's findings of fact and conclusions of law do not constitute a final order and thus were not appealable to the district court. This contention lacks merit. Plain-

tiffs misunderstand the basis upon which H & W2 pursued its appeal. H & W2 appealed the bankruptcy court's alleged failure (1) to issue conclusions of law in accordance with this court's mandate and (2) to conduct a new trial. The district court's opinion dismissing H & W2's appeal was not based on the argument that Judge Baxter's findings and conclusions were neither final nor appealable. Thus, we have jurisdiction to decide whether the district court's dismissal of H & W2's appeal was proper.

## THE BANKRUPTCY COURT'S ACTION ON REMAND

Judge Ray, who presided at the October 1985 hearing and issued the amended order of sale in controversy, died in 1987. Judge Baxter attempted to place himself in the same position as Judge Ray and elected to hear only the auctioneer as a witness.

■ In the absence of a unanimous agreement of the parties, however, a new trial is ordinarily required where a deceased judge has failed to make findings of fact and conclusions of law. *See Arrow–Hart, Inc. v. Philip Carey Co.*, 552 F.2d 711, 713 (6th Cir.1977); *see also* Fed.R. Civ.P. 63;[4] 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2922 at 340–41 & Supp. 119–20 (1973 & 1989 Supp.). When a new trial is required, it should be conducted *de novo*. *Whalen*, 684 F.2d at 278.

■ Judge Baxter limited the scope of the remand hearing in an attempt to duplicate the record which he felt would have resulted from the original hearing before Judge Ray had such a record been made and preserved. Both sides now admit that the bankruptcy court should have conducted an unlimited *de novo* hearing to determine whether the good will and trade name

---

**3.** H & W2 further points out that the bankruptcy court corrected the error in its favor in an amended order entered October 10, 1985.

**4.** Rule 63 provides for the substitution of a new judge for one disabled by death when the death occurs after "findings of fact or conclusions of law are filed." Fed.R.Civ.P. 63. The courts

have *uniformly* accepted the applicability of Rule 63 to cases where the death of a judge comes before filing of findings and conclusions. *Whalen v. Ford Motor Credit Co.*, 684 F.2d 272, 274 n. 5 (4th Cir.) (citing *Arrow–Hart*), *cert. denied*, 459 U.S. 910, 103 S.Ct. 216, 74 L.Ed.2d 172 (1982).

of H & W1 were bid upon at the 1982 auction. The bankruptcy court used a flawed hearing procedure, but we, nevertheless, conclude that its findings of fact with respect to the entrance of the amended order confirming the sale *nunc pro tunc* are sufficient without another remand to provide the district court and this court with a proper evidentiary base for review of this case.

## DID THE BANKRUPTCY COURT HAVE AUTHORITY TO AMEND THE ORDER TO INCLUDE GOOD WILL AND TRADE NAME?

Judge Baxter made the following findings upon remand:

In accordance with the instructions on remand, a hearing was held on March 9, 1989. Present at the hearing were the Trustee and intervenors H & W2, APC, Olle and Cato. The Trustee reported that he was present initially at the auction sale. The sale was conducted in a room where the assets were stored, which also was the same building that housed assets of Progress Corporation. After the H & W1 sale, the auctioneer, Stanley Rosen, went on to conduct the sale of the Progress Corporation assets. After the sales, Rosen or someone from his office notified the Trustee of the results of the sales. The Trustee based his report to the Court on this oral report received from Rosen's Office. The usual policy is to note that there was no bid for good will and trade name since these are often sold separately or abandoned. The initial report from Rosen's office to the Trustee usually is made telephonically; a written report follows in three to six weeks. Ninety-nine percent of the time the telephonic report is given directly to the Trustee. Occasionally a message is left with his secretary.

The Trustee also reviewed the events following the order of confirmation. Subsequent to the sale, an officer of PSI notified the Trustee that the trade name and good will were sold. The Trustee notified Judge Ray of this new information. Judge Ray told him to file an application for instructions. The Court then set the matter for hearing. . . .

Testimony of the witness revealed that Rosen & Company was employed by the Trustee after appointment by the Court to gather the assets of the Debtor and sell them at public auction. The auction was publicized in the usual manner and was well attended. (Testimony, S. Rosen) The assets were offered in bulk. The auctioneer announced prior to the sale that the assets offered were the Trustee's right, title and interest in the property, free and clear, in addition to the seller's files, good will and trade name. Also offered was the Trustee's right to negotiate the purchase of certain patterns. All sales were subject to confirmation by the Bankruptcy Court. (Testimony, S. Rosen).

Spirited bidding followed, and the assets were sold in bulk for $25,000.00 to PSI. The H & W1 auction required forty-five to sixty minutes. It was followed by a sale of the assets of Debtor Progress Corporation, the parent company of H & W1, which was conducted in another area of the same premises by the same auction company. At the Progress Corporation auction the assets were first offered in bulk. Then the trade name was offered. There were no bids for these items so the assets were sold piecemeal. The Progress Corporation assets sale took three to four hours. (*Id.*).

The auctioneer, Rosen, testified that his usual procedure was for him or his office to report the results of an auction telephonically to the Trustee, probably late the same afternoon. The telephonic report on the H & W1 sale indicated that there were no bids for the good will and trade name of the Debtor. A written report ensued on the same date which omitted any mention of good will and trade name. (Testimony, S. Rosen). The Trustee then asked the witness whether his records reflected that the good will and trade name of H & W1 were sold. The witness responded that they were sold within the general offer of the bulk sale. He stated that the good will and trade name of the related entity,

Progress Corporation, were not sold, thus leading to the error in reporting.

Since the Trustee was the only examiner of the witness at the previous hearing which was heard by Judge Ray, no one else was permitted to examine the witness. Intervenors APC, Cato, and Olle argued that the only way an order could be altered was through Fed.R.Civ.P. 60. They argued that the error was not a clerical mistake under R.60(a), which can be corrected at any time. It was their further assertion that this was a substantive error intentionally placed in the order and therefore, under R.60(b), the Court had no jurisdiction to amend after one year. At the remanded hearing, counsel for H & W2 requested to make a proffer and effectively expand the record to show that there was no reliance by APC on the Court's earlier order. The request was denied, as such an expansion of the record would be beyond the instructions of the remand order. Similar requests by APC and Cato were likewise denied. To the best recollection of the parties present at the 1982 hearing, the Court at that time made no conclusions of law supporting its decision to enter the Amended Order and therefore no jurisdictional basis for the Amended Order was stated.

We must decide whether Rule 60 gives the bankruptcy court authority to amend the order approving sale to include the good will and the trade name of H & W1.[5]

## A. RULE 60(a)

Plaintiffs contend that the error made in reporting the auction, excluding good will and trade name, can be corrected only un-

---

**5.** Bankruptcy Rule 9024 makes Rule 60 applicable to cases under the Bankruptcy Code. Generally, it gives the bankruptcy judge the discretion available to a district judge under Rule 60. *See In re Emergency Beacon Corp.*, 666 F.2d 754, 758 (2d Cir.1981) (discussing former Bankruptcy Rule 924).

**6.** Rule 60(b)(1) provides:

**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or a party's

der Fed.R.Civ.P. 60(b)(1), and because H & W2 did not seek relief from the December 16, 1982 order within one year, the bankruptcy court lacked jurisdiction to vacate or amend its original order.[6] H & W2 responds that the bankruptcy court's order evidenced only an adoption of the trustee's report, and that the error made in reporting constituted a clerical error which can be corrected at any time under Fed.R.Civ.P. 60(a).[7]

██ Rule 60(a) applies to errors of "transcription, copying, or calculation, and not to a fundamental failure of discovery or notification." *Bershad v. McDonough*, 469 F.2d 1333, 1336 (7th Cir.1972). The need to consider evidence outside the record is some indication that the error involved is not merely clerical. *See In re Frigitemp Corp.*, 781 F.2d 324, 328 (2d Cir.1986); *Hirsch v. United States*, 186 F.2d 524, 525 (6th Cir.1951); *see also* 13 ALR Fed. 810–812 & Supp. 135 (1972 & 1989 Supp.). The power of a court under Rule 60(a), or its equivalent in the bankruptcy court, may be exercised upon motion of a party or by the court *sua sponte*, and it may be exercised "at any time." *See* 11 Wright & Miller, *supra*, §§ 2854 and 2855; *see also Jones & Guerrero Co. v. Sealift Pacific*, 650 F.2d 1072, 1074 (9th Cir.1981). In *Jones v. Anderson–Tully Co.*, 722 F.2d 211, 212–13 & n. 3 (5th Cir.1984), the Fifth Circuit held that if an error affects the substantive rights of the parties, it must be corrected under the provisions of Rule 60(b). The *Jones* court stated:

> Although Rule 60(a) clerical mistakes need not be made by the clerk, they must be in the nature of recitation of amanuensis mistakes that a clerk might make.

---

legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; . . . .

**7.** Rule 60(a) provides in relevant part:

**(a) Clerical Mistakes.** Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. . . .

They are not errors of substantive judgment. *Trahan v. First National Bank of Ruston,* 720 F.2d 832 (5th Cir.1983); *Dura–Wood Treating Co. v. Century Forest Industries, Inc.,* 694 F.2d 112, 114 (5th Cir.1982); *Warner v. City of Bay St. Louis,* 526 F.2d 1211, 1212 (5th Cir.1976). The mistake in the present case affects the substantive rights of the parties. It is not clerical, and if it in fact occurred, it is one of mistake, inadvertence, surprise, or excusable neglect governed by Rule 60(b)(1) and barred by the Rule 60(b) one-year statute of limitations. *Id.* at 212–13. In a footnote, the court instructed that Rule 60(b)(6), which is not subject to the one-year statute of limitations, allows a court to grant relief for "any other reason justifying relief from the operation of the judgment." *Id.* at 213 n. 3.

■ H & W2 relies on *American Trucking Associations, Inc. v. Frisco Transportation,* 358 U.S. 133, 79 S.Ct. 170, 3 L.Ed.2d 172 (1958), an ICC case involving a correction in a certificate granted by the Commission. We do not find it to be persuasive under the circumstances involved here where the substantive rights of the parties would be affected by the correction of the error. *See Warner v. City of Bay St. Louis,* 526 F.2d 1211, 1212 (5th Cir. 1976) ("[E]rrors that affect substantial rights of the parties are outside the scope of Rule 60(a).")

In this case, the error was not evident on the record as developed. In fact, the bankruptcy court found it necessary to hold an additional hearing to determine whether the trustee's report was erroneous. The error here certainly affected the rights of the parties in their commercial relationships and other litigation. We are satisfied that Rule 60(a) does not provide an avenue of relief for H & W2 because substantial rights of the parties are involved and there was no mere clerical mistake nor oversight by the court.

## B. RULE 60(b)

■ H & W2 argues that Rule 60(b)(4) provides a basis for amending the order to include good will and trade name in the bankruptcy sale "because the original Order, insofar as it unilaterally altered the terms of the auction sale, was a *void* judgment." *See* H & W2's Brief at 22 (emphasis in original). H & W2 argues further that this rule, which states "[o]n motion and upon such terms as are just, the court may relieve a party ... from a final judgment ... [when] the judgment is void," has "no time limit." Fed.R.Civ.P. 60(b)(4).[8]

"There is no question of discretion on the part of the court when a motion is under Rule 60(b)(4).... [e]ither a judgment is void or it is valid." 11 Wright & Miller, *supra,* § 2862. We are persuaded that the judgment in question was a valid exercise of jurisdictional authority by the bankruptcy court, although it may have been in error. We, therefore, conclude that Rule 60(b)(4) forms no basis for amending the order in this case.

■ H & W2 maintains also that Rule 60(b)(5) provides a basis for the discretion exercised by the bankruptcy court. The applicable language of that subsection deals with amending or giving relief from a final order if "it is no longer equitable that the judgment should have prospective application." Fed.R.Civ.P. 60(b)(5). Justice Blackmun, while a circuit judge, stated in connection with this part of Rule 60(b) that "caution, substantial change, unforeseenness, oppressive hardship, and a clear showing are the requirements." *Humble Oil v. American Oil Co.,* 405 F.2d 803, 813 (8th Cir.), *cert. denied,* 395 U.S. 905, 89 S.Ct. 1745, 23 L.Ed.2d 218 (1969). Where an order or decree has not been carried out in accordance with its intended effect, the court may change the order "upon an appropriate showing" if the "purposes" of the order "have not been fully achieved."

---

**8.** Rule 60(b) provides that "[t]he motion shall be made within a reasonable time, and for reasons (1), (2), and (3), not more than one year after the judgment order." H & W2's motion to correct was not filed timely under subsections (1),

(2) or (3), because H & W2 failed to file the motion until July 19, 1985, more than three years after the entry of the order confirming sale.

*See United States v. United Shoe Corp.*, 391 U.S. 244, 248, 88 S.Ct. 1496, 1499, 20 L.Ed.2d 562 (1968); *see also* 11 Wright & Miller, *supra*, § 2863 n. 7. We, however, find no authority in this circuit, and none has been cited to us, that warrants utilization of this section of the Rules to undo what is essentially an error. Because this section normally applies to an order in the nature of an injunction or a declaratory judgment, we find it inapplicable to the facts presented in this case.

We pass finally to consideration of the remaining subsection of Rule 60(b) which provides for the correction of a judgment "for any other reason justifying relief from the operation of the judgment." Fed.R. Civ.P. 60(b)(6). We have held that Rule 60(b)(6) should apply "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir.1989) (citing *Pierce v. United Mine Workers*, 770 F.2d 449, 451 (6th Cir.1985), *cert. denied*, 474 U.S. 1104, 106 S.Ct. 890, 88 L.Ed.2d 925 (1986)); *see also Ackermann v. United States*, 340 U.S. 193, 199, 71 S.Ct. 209, 212, 95 L.Ed. 207 (1950); *United States v. Karahalias*, 205 F.2d 331, 333 (2d Cir.1953) (holding that Rule 60(b)(6) may be used to grant relief in case of extreme and undue hardship). Courts, however, must apply subsection (b)(6) only "as a means to achieve substantial justice when 'something more' than one of the grounds contained in Rule 60(b)'s first five clauses is present." *Hopper*, 867 F.2d at 294; *see also Emergency Beacon Corp.*, 666 F.2d at 758.

■■■■ The difficulty in interpreting subsection (b)(6), and perhaps the reason for the paucity of decisions in this area, arises from the fact that almost every conceivable ground for relief is covered under the first three subsections of Rule 60(b). The "something more," then, must include unusual and extreme situations where principles of equity *mandate* relief. Parties seeking relief under Rule 60(b)(6), however, must file their motion within a "reasonable" time, which ordinarily depends on the

facts of a given case including the length and circumstances of the delay, the prejudice to the opposing party by reason of the delay, and the circumstances compelling equitable relief. *See Emergency Beacon Corp.*, 666 F.2d at 760 (holding that trustee's motion to vacate order authorizing debtor in possession to issue certificates of indebtedness filed twenty-six months after entrance of order was filed within a reasonable time); *In re Pacific Far East Lines*, 889 F.2d 242 (9th Cir.1989) (eighteen months not untimely nor unreasonable under circumstances); *Menier v. United States*, 405 F.2d 245 (5th Cir.1968) (two years not unreasonable).

■■■■ The facts of this case may present the kind of extraordinary circumstance invoking Rule 60(b)(6). The error in this case was neither the fault of the parties nor the product of a clerical mistake by the clerk or an official of the bankruptcy court. The error was not evident on the record as developed, and the bankruptcy court found it necessary to hold an additional hearing to determine whether the trustee's report was erroneous. In addition, the error arose in the special circumstances of a bankruptcy sale where a purchaser must rely on agents of the bankruptcy court to process the documents of transfer. We, therefore, believe the special facts of this case may present a situation requiring consideration of extraordinary relief under Rule 60(b)(6). At least the bankruptcy court or the district court should consider its ramifications.

On remand, the bankruptcy court or the district court must determine first whether subsection (b)(6) is applicable to the facts of this case. If so, the court then must determine whether H & W2 filed its motion to correct within a "reasonable time" considering the circumstances, including notice to plaintiffs of the error, promptness of plaintiffs' action and the prejudice involved.

A considerable problem with respect to applying Rule 60(b)(6) in this case is whether the correction made came about by reason of anything covered by subsections (1) through (3), or whether it came about by something else "justifying relief." *Lilje-*

*berg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 108 S.Ct. 2194, 2204, 100 L.Ed.2d 855 (1988); *Hopper, supra; see also Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.,* 791 F.2d 1334, 1338 (9th Cir.1986) ("on grounds other than those listed in the preceding clauses" involving "extraordinary circumstances"); *Spika v. Village of Lombard,* 763 F.2d 282, 284–85 (7th Cir.1985) ("exceptional circumstances" requiring "sufficient diligence" of moving party).

Recently, the Supreme Court has spoken on Rule 60(b)(6) requirements clarifying language from an earlier decision on the subject:

> Rule 60(b)(6), upon which respondent relies, grants federal courts broad authority to relieve a party from a final judgment "upon such terms as are just," provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5). The rule does not particularize the factors that justify relief, but we have previously noted that it provides courts with authority "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice," *Klapprott v. United States,* 335 U.S. 601, 614–615, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949), while also cautioning that it should only be applied in "extraordinary circumstances," *Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950).

*Liljeberg, supra* (footnote omitted). Footnote 11 of *Liljeberg* discusses *Klapprott* in further detail:

> In *Klapprott v. United States,* 335 U.S. 601, 613 [69 S.Ct. 384, 389, 93 L.Ed. 266] (1949), we held that a party may "not avail himself of the broad 'any other reason' clause of 60(b)" if his motion is based on grounds specified in clause (1) —"mistake, inadvertence, surprise or excusable neglect." Rather, "extraordinary circumstances" are required to bring the motion within the "other reason" language and to prevent clause (6) from being used to circumvent the 1–year limitations period that applies to

clause (1). This logic, of course, extends beyond clause (1) and suggests that clause (6) and clauses (1) through (5) are mutually exclusive. See 11 C. Wright & A. Miller, Federal Practice and Procedure § 2864 (1973).

*Id.,* 108 S.Ct. at 2204 n. 11.

■ In order to be entitled to the extraordinary and exceptional relief afforded under Rule 60(b)(6), the party seeking relief must show that it filed a motion for relief under that Rule, and not under some other section of Rule 60. *United States v. Black,* 776 F.2d 1321, 1333 (6th Cir.1985). In *Black,* we stated:

> In order to be successful on this claim, Smith has to show that the December 29, 1982 motion could be construed as seeking relief under Rule 60(b)(6), that it was timely, and that there existed sufficient extraordinary circumstances upon which the relief could be granted.... That is, a Rule 60(b)(6) motion "must be based upon some reason other than those stated in clauses (1)–(5)." 7 *Moore's Federal Practice* ¶ 60.27[1] (2d ed. 1985). The December 29, 1982 motion focused exclusively on the misplaced transcript, which we noted earlier fell within the excusable neglect clause of Rule 60(b)(1). Since we interpret the request for relief as coming under clause (b)(1), clause (b)(6) would not apply.

*Id.* at 1333. We, therefore, remand to the district court for the limited purpose of determining whether H & W2's motion to correct comes within the proper purview of Rule 60(b)(6) and was filed within a "reasonable time."

For the foregoing reasons, we REVERSE and REMAND the case for further proceedings consistent with this opinion.