924 F.2d 1058
 RICO Bus.Disp.Guide 7675
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
The HENRY & WRIGHT CORPORATION, Plaintiff-Appellant,
v.
AUTOMATIC PRESS CORPORATION, James W. Cato, Frank Olle, John
Doe Vendors, Defendants-Appellees.
 No. 89-4018.
 United States Court of Appeals, Sixth Circuit.
 Feb. 5, 1991.
 
 Before WELLFORD* and ALAN E. NORRIS, Circuit Judges; and BALLANTINE**, District Judge.
 PER CURIAM.
 
 
 1
 This is the third time that different phases of this complicated dispute have come before this court. In an earlier opinion, Olle v. Henry & Wright Corp., 910 F.2d 357 (6th Cir.1990), we dealt at some length with the underlying facts which developed following the bankruptcy liquidation sale of assets of Henry & Wright Corp., the original corporation bearing that name, referred to herein as H & W1.[1]
 
 
 2
 Briefly, we set out the pertinent background information. H & W2, a South Carolina corporation, acquired the assets of H & W1 by assignment from Press Services, Inc. owned by Michael Olle and Carolyn Olle. Press Services, Inc. purchased the assets of H & W1 at a bankruptcy auction for $25,000. The bill of sale for the purchase of the assets of H & W1 reads that Service Press purchased
 
 
 3
 in entirety the Trustee's right, title and interest, if any, in and to the assets of Henry & Wright Corp. including only the assets located on the premises at 3913 St. Clair Avenue, Cleveland, Ohio including the parts inventory, and drawings, patterns, and any customer list that are on the above mentioned premises.
 
 
 4
 This bankruptcy sale was contingent on confirmation by the bankruptcy court. After the sale, the auctioneer informed the bankruptcy trustee that he did not receive bids for the trade name and good will of H & W1, and the trustee so informed the bankruptcy court. The bankruptcy court thereafter entered an order confirming the sale and abandoning the trade name and good will.[2]
 
 
 5
 Former officers and employees of H & W1 formed the automatic Press Corporation (APC).[3] H & W2 alleges that, in the operation of its business, APC used and still uses copies of H & W1's blueprints, drawings, and cross-referencing materials which it fraudulently acquired. APC asserts that the blueprints were a gift from a former owner of H & W1. Using these materials, H & W2 contends, APC infiltrated the business of manufacturing and selling Henry & Wright punch presses and replacement parts. H & W2, which was formed after H & W1's liquidation sale, entered the business of selling and servicing Henry & Wright punch presses through the purchase of H & W1's assets.
 
 
 6
 In 1986, H & W2 filed suit claiming that APC defrauded the bankruptcy estate of H & W1 by concealing the existence of corporate assets from the trustee and by using those assets in the operation of APC. H & W2 contends that this fraudulent conduct violates RICO, 18 U.S.C. Sec. 1961, et seq. The district court consolidated this RICO claim with a diversity claim H & W2 filed in 1984 because both claims were based on the same operative facts. The 1984 diversity action was based on the claim that APC fraudulently converted assets from H & W1 and, therefore, was liable to H & W2 for tortious interference with a business relationship, conversion of trade secrets, unfair competition, and interference with trade name and good will.
 
 
 7
 APC moved for summary judgment and dismissal of the claims of H & W2. It argued that even if APC had defrauded H & W1 prior to the liquidation sale, H & W2 would only have suffered indirect injuries and, therefore, did not have RICO standing which requires direct injuries to the plaintiff. The district court held that since Press Services only purchased and assigned the tangible assets of H & W1, Press Services' assignee, H & W2, was not a successor in interest. The court decided that H & W2, having suffered no direct injury from the alleged RICO violations, lacked standing to sue under RICO. The district court also concluded that since the bankruptcy court had no jurisdiction to amend its 1982 order to include trade name and good will, these intangible assets of H & W1 were not part of the assets purchased and assigned by Press Services. The court further reasoned that as a consequence, H & W2 (through Press Services) can be considered neither a purchaser of H & W1 nor a successor of interest of H & W1. Because all of H & W2's state claims are based on the premises that it was a successor in interest to H & W1, H & W2 failed to state a claim upon which relief may be granted. The district court granted summary judgment as to the RICO claim and dismissed all claims with prejudice. H & W2 has appealed.
 
 
 8
 We, again, must REVERSE and REMAND.
 
 
 9
 Our remand in 910 F.2d 357 is apparently still pending in bankruptcy court or in district court. The court, upon remand from our decision, may decide that H & W2's motion to correct a prior judgment which omitted the listing of trade name and good will, was appropriate. That may well have a bearing on the decision in our case. But even if the decision is against H & W2 on its claim of owning H & W1's trade name and good will, we must evaluate its complaint in light of RICO standards.
 
 
 10
 H & W2 contends that the district court erred as a matter of law in holding a direct injury from racketeering activity is required to assert a claim under RICO. H & W2 maintains that anyone injured in business by competing with APC may bring a claim because it asserts that APC uses assets gained through racketeering activity in the operation of its business and is engaged in interstate commerce. H & W2 argues that its complaint meets RICO requirements.
 
 
 11
 The RICO statute, 18 U.S.C. Secs. 1961-1968, provides for civil and criminal remedies for racketeering activities. Section 1964(c) allows for a private civil action for treble damages and attorney's fees for "any person injured in his business or property by reason of a violation of Sec. 1962 of this chapter...." 18 U.S.C. Sec. 1964(c). 18 U.S.C. Sec. 1962 defines the criminal violations necessary for the recovery of civil damages under Sec. 1964(c):
 
 
 12
 (b) It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
 
 
 13
 (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
 
 
 14
 To assert a claim under Sec. 1962(c) of RICO, the plaintiff must allege that there was "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.C. v. Imrex Co., 473 U.S. 479, 496 (1985). A plaintiff can only recover to the extent that he has been injured within the meaning of RICO.
 
 
 15
 Sedima holds that individuals who suffer indirect injuries through the violation of Sec. 1962 may have standing to assert a claim under Sec. 1964(c). "RICO is to be read broadly" to permit recovery for direct and indirect damages which flow from the commission of predicate acts. Sedima, 473 U.S. at 497.
 
 
 16
 The district court, APC, and the individual defendants cite Warren v. Manufacturers Nat'l Bank of Detroit, 759 F.2d 545 (6th Cir.1985), for the proposition that appellants who suffer indirect injuries through racketeering activity, lack standing to assert a claim under RICO. We held in Warren that a plaintiff, who lost his job as chairman of the board when his corporation was forced into bankruptcy by fraudulent acts, lacked standing under RICO to sue for damages essentially suffered by the corporation. Id. at 545. Plaintiff's injuries were not directly caused by the predicate acts, but were merely derived from the injuries suffered by the corporation. Id. Thus, we held that employees and shareholders of a corporation who suffer injuries incidental to those suffered by a corporation have no standing to sue under RICO. Other cases cited by the appellees also involve injuries to employees or shareholders incidental to injuries suffered by a corporation or injuries to a taxpayer incidental to injuries suffered by a governmental entity.[4] We find these case inapposite.
 
 
 17
 Here, the emphasis is not on the party against whom the predicate acts were committed, rather the claim is based upon an injury claimed to have happened to appellant by reason of alleged RICO misconduct. H & W2 argues that any business competing against such an enterprise can assert a claim under RICO for its resulting injuries. Sedima, 473 U.S. at 497 n. 15. It is H & W2's contention that it has been injured by having to compete in the market place with APC, which obtained an unfair economic advantage by defrauding H & W1's bankruptcy estate and trustee.
 
 
 18
 "Congress wanted to reach both 'legitimate' and 'illegitimate' enterprises" in enacting RICO. Sedima, 473 U.S. at 499. Section 1962 of the RICO statute renders illegal "use [of] money derived from a pattern of racketeering activity to ... acquire control of an enterprise through a pattern of racketeering activity...." Id. at 495. H & W2 alleges that APC was incorporated by employees and officers of H & W1 before the liquidation sale of H & W1, and that APC thus defrauded H & W1 by wrongfully obtaining assets essential to its business of selling and servicing Henry & Wright punch presses. H & W2 further alleges that APC was guilty of conversion by taking a substantial portion of the parties inventory of H & W1, concealment of these assets from the trustee in bankruptcy, and fraudulently accepted money due on accounts receivable of H & W1. In addition, H & W2 claims that appellant converted trade secrets to its own use, and used wire and the United States mail to defraud H & W1's bankrupt estate.
 
 
 19
 Appellant has alleged a number of predicate acts by APC against H & W1, which satisfies the conduct requirement under Sec. 1962(c) of RICO.
 
 
 20
 The second requirement for standing under Sec. 1962(c) is that the conduct be of an enterprise. At the time the appellees allegedly committed the predicate acts, they had incorporated APC and allegedly acted on behalf of that enterprise. APC was therefore claimed to be using the defrauded assets of H & W1 to operate its business. We deem this assertion to be sufficient also.
 
 
 21
 The third element necessary to assert standing for a violation of Sec. 1962(c) is a pattern of racketeering activity, which must be established under Sec. 1961(5) by pleading and proving at least two racketeering acts. H & W2 has alleged sufficient acts of racketeering activity to meet this requirement.
 
 
 22
 The last element necessary to assert successfully a RICO claim is racketeering activity. 18 U.S.C. Sec. 1961 lists the predicate acts that constitute racketeering activity, which includes any "offense involving fraud connected with a case under title 11." (bankruptcy statutes). H & W2 alleges that APC committed bankruptcy fraud by converting and concealing the assets of H & W1's bankruptcy estate. Because we deem that H & W2 has alleged each of the four elements required for a RICO claim and further, alleges competitive injury to its business from APC's unfair competition, H & W2 has standing to assert a claim under RICO. Whether or not APC was actually involved in a pattern of racketeering activity is a factual issue which must be decided a trial.
 
 
 23
 APC contends, in response, that H & W2, a new business, cannot prove that it lost any profits; therefore, it cannot establish that it suffered the necessary injury to its business or property for standing under RICO. We note, however, that this record implies that H & W2 and APC are the only competitors who sell and service Henry & Wright punch presses.[5] H & W2 maintains that APC could not operate its business except for the alleged defrauding of H & W1's bankruptcy estate. We are persuaded that these circumstances present a jury question of damages for a factfinder.
 
 
 24
 Having concluded that H & W2 has adequately met RICO requirements in its complaint, we REVERSE the award of summary judgment in this respect.
 
 
 25
 We next consider H & W2's state law claims dismissed for failure to state a claim. Each of these claims is based upon H & W2's assertion that it acquired at the bankruptcy sale more than mere tangible assets upon H & W1's bankruptcy liquidation sale. These issues may be settled only when the question submitted upon remand involving trade name and good will in 910 F.2d 357 is finally determined.
 
 
 26
 Regrettably, this case has a long and expensive history for the litigants. It is hoped that the issues in this case, and in the prior remand, will receive the prompt attention of the district court involved.
 
 
 27
 We REVERSE the grant of summary judgment on the RICO cause of action, and REMAND a consideration of the state causes of action for appropriate action based on a resolution of the H & W1 trade name and good will dispute (the subject of a prior remand).
 
 
 
 *
 THE HONORABLE HARRY W. WELLFORD took senior status effective January 21, 1991
 
 
 **
 THE HONORABLE THOMAS A. BALLANTINE, JR., Judge, United States District Court for the Western District of Kentucky, sitting by designation
 
 
 [1]
 See also 835 F.2d 879 (6th Cir.1987)
 
 
 [2]
 After the bankruptcy court made conclusions of law and findings of fact in In re Henry & Wright Corp., on remand, H & W2 appealed to the district court, contending that the bankruptcy court erred by failing to conduct a new trial. The district court dismissed the appeal, reinstated the bankruptcy court's original order, and reaffirmed its earlier decision that the bankruptcy court was without jurisdiction to amend the order. On appeal, in Olle v. Henry & Wright Corp., in 1990, we remanded the case to the district court to determine whether the motion of H & W2 to correct the Order Confirming Sale "comes within the proper purview of Rule 60(b)(6)" and was filed within a "reasonable time."
 
 
 [3]
 H & W2, appellant, alleges that appellees formed the new corporation, APC, during the last year that H & W1 was in operation, while they were still employed by H & W1
 
 
 [4]
 Rand v. Anaconda-Ericsson, 794 F.2d 843, 849 (2d Cir.), cert. denied, 479 U.S. 987 (1986), and Carter v. Berger, 777 F.2d 1173, 1176 (7th Cir.1985)
 
 
 [5]
 Frank Olle gave deposition testimony that it would be impossible to operate a full-service company, selling, servicing, and replacing Henry & Wright press parts without the documents APC required from H & W1