**Melvin J. LANEY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 130–80L.**

United States Claims Court.

June 18, 1992.

Melvin J. Laney, pro se.

Marc A. Smith, Washington, D.C., with whom was Barry M. Hartman, Acting Asst. Atty. Gen., Dept. of Justice, Environment and Natural Resources Div., for defendant.

## OPINION

SMITH, Chief Judge.

The pending motion before the court is plaintiff's February 25, 1992 Motion to Reopen filed pursuant to Rules of the United States Claims Court (RUSCC) 60(b).[1] After careful consideration of the briefs filed by the parties, and after oral argument, the court denies plaintiff's motion. Although the court sympathizes with the plight of this particular plaintiff, the court is compelled by the rules of this court and the controlling case law to reach this result.

## FACTS

In 1980, plaintiff filed a taking claim in the Court of Claims asserting that the U.S. Army Corps of Engineers (Corps) had rendered an island he had purchased off the coast of Florida, Rodriguez Key, valueless when it denied his application for a fill permit. Plaintiff was seeking approximately $16 million in compensation. Plaintiff purchased the 160 acre island to establish a primate breeding and research facility. Plaintiff intended to breed and raise different species of monkey and squirrel for the purpose of producing and testing polio and other vaccines. Apparently, the Florida Keys provide an ideal habitat for raising such animals.

In 1978, plaintiff filed an application for a fill permit with the Corps. In 1979, the Corps denied the application on the ground that a primate breeding and research center would be incompatible with the island's status as "an undisturbed mangrove island which functions as a wetland area performing natural biological functions important to the public." The state of Florida Department of Environmental Regulation approved plaintiff's application to fill.

In the initial Court of Claims proceeding, the parties filed cross motions for summary judgment. The appellate division of the court denied these motions and remanded the case to the trial division for further proceedings because the case raised factual issues that required consideration at trial. *Laney v. United States*, 228 Ct.Cl. 519, 527, 661 F.2d 145 (1981). In March 1983, the case went to trial before Chief Trial Judge Philip R. Miller. However, plaintiff went bankrupt before a decision was rendered. In December 1983, the parties filed a stipulation of dismissal pursuant to RUSCC 41(a)(1)(B). Plaintiff claims that the stipulation was part of a settlement he entered into with the government wherein, in exchange for agreeing to dismiss the case, plaintiff would be allowed to place his $16 million claim on his federal tax return as a business loss. Plaintiff admits that

---

**1.** In his motion, plaintiff incorrectly cited RUSCC 41 as the basis for reopening the case.

RUSCC 41 controls the dismissal of cases.

this alleged settlement was never memorialized in writing. Plaintiff reported a business loss on his taxes from tax years 1984 through 1990.

In 1990, the Internal Revenue Service (IRS) formally determined that plaintiff had not suffered a business loss during the years in question and imposed a deficiency against plaintiff for back taxes, interest, and penalties. Plaintiff argues that the IRS determination constituted a breach of the settlement agreement he had with the government and now seeks to reinstate his original taking claim.

## DISCUSSION

RUSCC 41(a) provides that a voluntary or stipulated dismissal is without prejudice in an instance such as this, where the dismissed case does not assert a claim previously dismissed in this or another federal forum. *See* RUSCC 41(a) ("Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in this court or in any court of the United States an action based on or including the same claim."). However, in order to reinstitute a cause of action previously dismissed in this court, a party must comply with the provisions of RUSCC 60. More specifically, plaintiff must comply with RUSCC 60(b), which sets forth the bases upon which a final judgment can be disregarded where, as here, the dispositive judgment or order being challenged is not due to a clerical error.

On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, whether denominated intrinsic or extrinsic, misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. *The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken.*

RUSCC 60(b) (emphasis added).

Of particular relevance to plaintiff's motion is the time limitations set forth in RUSCC 60(b). Although the rule dictates that all motions must be filed within a "reasonable time," the filing deadline differs depending on the asserted basis of relief. Where the basis for relief falls within one of the first three categories, a party must file its motion within one year of final judgment. Where the basis for relief falls within one of the latter three categories, a party must file its motion within a "reasonable time" as determined by the court on a fact specific basis. *See Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir.1990) (whether a motion is filed within a reasonable time "ordinarily depends on the facts of a given case including the length and circumstances of the delay, the prejudice to the opposing party by reason of the delay, and the circumstances compelling equitable relief").

▮▮ The government argues that RUSCC 60(b) precludes the reopening of plaintiff's original taking claim. Defendant contends that the basis upon which plaintiff rests his motion—"(3) fraud, misrepresentation ... or other misconduct of an adverse party"—required plaintiff to bring his motion within one year after the December 6, 1983 stipulation of dismissal. Defendant argues that because plaintiff did not file his motion within that time, the court cannot reopen the case.

The court finds defendant's interpretation of RUSCC 60(b) to be the correct one. Of the six categories enumerated in RUSCC 60(b), plaintiff's asserted basis for

relief falls squarely within the "fraud, misrepresentation ... or other misconduct of an adverse party" category. Plaintiff was therefore required to file his motion within one year of the stipulation of dismissal. The only other category conceivably applicable to plaintiff's request for relief is the last, catch-all category: "any other reason justifying relief from the operation of the judgment." However, as defendant correctly points out, that category cannot be invoked (and the one-year time limitation avoided) by a party if the rationale for seeking relief under 60(b) is subsumed within one of the first three categories. As the Supreme Court clarified in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863, 108 S.Ct. 2194, 2204, 100 L.Ed.2d 855 (1988):

> Rule 60(b)(6), upon which respondent relies, grants federal courts broad authority to relieve a party from a final judgment upon such terms as are just, provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5).

(Citations omitted). *See also Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir.1989) (holding that courts should apply Rule 60(b)(6) "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule"); 7 MOORE'S FEDERAL PRACTICE ¶ 60.-27[1] (2d ed. 1985) (a Rule 60(b)(6) motion "must be based upon some reason other than those stated in clauses (1)–(5)"); 11

Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2866 (1973) ("The concept of reasonable time cannot be used to extend the one year limit. A motion under clauses (1), (2), or (3) must be denied as untimely if made more than one year after judgment regardless of whether the delay was reasonable. Nor does the court have any power to enlarge the time limits of the rule."). This construction of the rule is inherently logical as the one-year limitation imposed on the first three categories would have no meaning if every party seeking relief could also invoke as an alternative ground for relief the last, catch-all category.

Under the facts of this case, the court cannot detect any basis upon which to invoke subsection (b)(6) of Rule 60. Plaintiff is not seeking relief for unusual or extraordinary reasons not covered by the first three categories of RUSCC 60(b), the rigorous standard a party must meet to successfully invoke Rule 60(b)(6). *See Olle*, 910 F.2d at 365 ("The difficulty in interpreting subsection (b)(6), and perhaps the reason for the paucity of decisions in this area, arises from the fact that almost every conceivable ground for relief is covered under the first three subsections of Rule 60(b)."). Rather, plaintiff is seeking relief due to alleged misconduct by the government. Plaintiff is therefore subject to the one-year limitation. As plaintiff's present motion was filed over eight years after the stipulation of dismissal, the court must deny the motion.[2]

---

**2.** At oral argument, the government argued that a recent decision by the United States Court of Appeals for the Federal Circuit, *UNR Industries, Inc. v. United States*, 962 F.2d 1013 (Fed.Cir. 1992), provides an additional basis upon which to deny plaintiff's motion. In *UNR*, the Federal Circuit broadly construed 28 U.S.C. § 1500 as divesting the Claims Court of jurisdiction whenever the "same claim" is filed against the federal government in the Claims Court and "another federal court," no matter which claim is filed first. *Id.*, 962 F.2d at 1021. The *UNR* court defined claims as "the same" whenever they arise from the same operative facts. *Id.*, 962 F.2d at 1023–24. In so ruling, the court rejected the argument that whether a given claim is the "same" as another should depend on the legal theory upon which those claims are based. *Id.* at 1023.

Defendant argues that because plaintiff is presently challenging a deficiency determination by the IRS in the United States Tax Court, this court is divested of jurisdiction under the holding in *UNR*. Without deciding, the court observes that the *UNR* decision may have the effect of barring plaintiff's claim in the Claims Court. Although the legal theories underlying plaintiff's taking claim and his challenge of the IRS' deficiency determination differ, both arise from the same operative facts. As a result, the broad language of both § 1500 and the *UNR* decision suggest that plaintiff's present action would fall within the scope of that jurisdictional statute. The court does note, however, that 28 U.S.C. § 1500 has never been directly applied to simultaneous actions pending in the Tax Court and the Claims Court. The only case discussing the issue, *Maguire Industries, Inc. v. United*

■ Even if plaintiff's motion was not barred by the one-year time limitation set forth in RUSCC 60(b), the court would still be reluctant to resurrect plaintiff's taking claim. Looking at the evidence offered by plaintiff in the most favorable light possible, it is highly doubtful that a settlement agreement was ever entered into between plaintiff and the government. A particularly noteworthy fact undermining plaintiff's contention is that the alleged agreement was never memorialized in writing. Considering the large sum of money involved—$16 million—plaintiff certainly had an interest in securing the terms of such an agreement in writing. The court also does not attribute much credibility to the affidavit of Thomas C. Henry, plaintiff's attorney in the original Court of Claims proceeding, who attests to the accuracy of plaintiff's account of the events leading up to the purported settlement. In his affidavit in support of plaintiff's motion, Mr. Henry attested:

> During my representation [of plaintiff], Mr. Fred Disheroon, representing the United States, repeatedly made a settlement offer that the proper remedy for Mr. Laney's claim for the taking of his island primate farm and vaccine research facility, was to place this claim on his federal business tax return, where his $16 million plus claim would be honored....[3] After Mr. Laney filed bankruptcy in 1984, I negotiated a voluntary dismissal of 130–80L with the understanding that Mr. Laney had the right to enter the full amount of his claim on his business tax return as partial compensation for the United States' taking of his property, and that he had the right to reopen his case at any time.[4]

From Mr. Henry's affidavit and plaintiff's statements at oral argument, the court is forced to reach the conclusion that instead of making a "settlement offer," Mr. Disheroon merely. suggested (sometime before the parties stipulated to dismissal) that plaintiff seek relief by means of claiming a business tax loss with the IRS, an action any taxpayer can take without a settlement agreement with the government. The averment that Mr. Disheroon proposed that "the proper remedy for Mr. Laney's claim ... was to place [it] on his federal business tax return," without more, is insufficient to confer contractual rights on plaintiff. Moreover, any "understanding" plaintiff may have had with the government concerning the tax treatment of his taking claim would require, to be valid, written approval of the Secretary of the Treasury, an approval for which there is no evidence of here. *See* 26 U.S.C. § 7122 (1989).

Further, plaintiff's own statements at oral argument belie his claim that Mr. Disheroon entered into a settlement agreement. In response to the court's concern that the alleged settlement agreement was not memorialized in writing, Dr. Laney attributed to Mr. Disheroon statements which do not rise to the level of a settlement agreement:

> COURT: Normally, knowing the procedural formalities of settlements with the Department of Justice where you often have settlement memos and you have several procedural layers, and this is something that goes back into our cases since the United States has always been concerned about the ability of its agents to bind it. Usually, the remedy for this concern has been fairly extensive paperwork. That's a hallmark of this government litigation. You get a lot more paper than you do in private litigation, because the government operates by paper. Here, not only do we not have any paper on the government's side in evidence, but we have no paper where you generally

States, 114 Ct.Cl. 687, 86 F.Supp. 905 (1949), however, lends support to the possibility. In *Maguire*, the court found that an appeal pending in the United States Court of Appeals for the District of Columbia from a decision of the Tax Court divested the Court of Claims of jurisdiction under § 1500. In reaching this finding, the court noted in *dicta* that the Tax Court's proceedings "come within the spirit of those proceedings referred to in section 1500 of Title 28 of the United States Code." *Id.* at 689.

**3.** Henry Affidavit, February 3, 1992, paragraph 2.

**4.** Henry Affidavit, February 3, 1992, paragraph 4.

have it. We see stipulations come through virtually, as Chief Judge I sign them virtually every day—or the transcript—for purposes of the judgment. And the stipulations are detailed, and set out essentially what the agreement of the parties are. In this case, we don't have anything like that, or anything that would indicate the United States agreed to this. How would you respond, Dr. Laney, to that?

LANEY: I've asked Mr. Henry on that, and he said that it was his belief that it had been in the pleading and it had been in other correspondence. I asked him for copies of correspondence and other things like that. Obviously, I need that. He was unable to come up with that. He said that it was his belief that he did not need to do that because it had already been offered by the government.

COURT: Into the formal record?

LANEY: No.

COURT: Offered—

LANEY: No. I went with Mr. Henry on at least one occasion to meet with Mr. Disheroon and—you know—he made those representations. He said that the only way that I'll ever settle this is for you to dismiss and take your tax things.

Transcript of Oral Argument, June 5, 1992, pages 23–25. Moreover, in summation, plaintiff also admitted that Mr. Disheroon was in fact against settling the case.

LANEY: I think that there are great equities that cry out here, particularly when the government attorney who opposed the settlement, and I put in things that show that the Army Corp of Engineers was willing to settle. The state of Florida decided this was an important project. There were actions taken by the United States Department of Justice just to say we will not settle this case. We don't want it heard, we don't want it settled, we don't want this whole matter heard. I find it troubling that the law would allow such an injustice to occur.

Transcript of Oral Argument, June 5, 1992, page 35. In light of plaintiff's own averments at oral argument, the court must conclude that no settlement agreement was ever consummated.

## CONCLUSION

For the foregoing reasons, the court denies plaintiff's Motion to Reopen. The case remains dismissed pursuant to the voluntary stipulation entered into on December 6, 1983.

IT IS SO ORDERED.