No. 03-2079
File Name: 05a0273n.06
Filed: April 12, 2005

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Jobst Blachy, et al., | ) | |
| | ) | |
| Plaintiff-Appellees, | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Robert Butcher, et al., | ) | |
| | ) | **OPINION** |
| Defendant-Appellants. | ) | |
| _____ | ) | |

**Before: MOORE and GIBBONS, Circuit Judges, and MILLS, District Judge.**[*]

**RICHARD MILLS, District Judge.**

Rosemary Butcher's Rule 60(b) motion for relief below was patently without merit.

Her appeal from the district court's denial was equally baseless.

The sanctions ordered by the district court were clearly proper and are affirmed.

In addition, Appellees' motion for sanctions on appeal under Rule 38 and § 1297 is

granted.

_____

[*] The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

1

**I. HISTORY**[1]

*A. Factual history*

Alexander Butcher ("Alexander") and his wife Rosemary Butcher ("Rosemary") sought to develop resort condominiums in northern Michigan through Little Traverse Development Company ("LTDC"), a Michigan corporation owned solely by Alexander. On June 30, 1978, Cedar Cove, a Michigan limited partnership in which Alexander was a partner, conveyed four parcels of land, consisting of approximately 100 acres in Little Traverse Township, to Alexander and Rosemary for the price of $640,000. By warranty deed dated July 6, 1978, Mr. and Mrs. Butcher conveyed two of these four parcels (40.81 acres in total) to LTDC. Both the June 30 and July 6 deeds were recorded on July 12, 1978. That same day, Alexander signed a warranty deed in his capacity as president of LTDC, conveying the unmortgaged portion of the property, consisting of 17.83 acres, back to Mr. and Mrs. Butcher as tenants by the entirety. This deed was recorded on July 14, 1978.

At Alexander's request, Lawyers Title issued a title commitment to LTDC for the full 40.81 acres on July 18, 1978. Lawyers Title failed to discover the 17.83 acre conveyance from LTDC back to Mr. and Mrs. Butcher. As a result, the title commitment erroneously listed LTDC as the owner of all 40.81 acres—including the 17.83 acres that had been conveyed to Mr. and Mrs. Butcher.

On November 1, 1978, Alexander, on behalf of LTDC, executed a master deed creating

---

[1]  The history set forth in this Opinion is largely taken from the Court's previous opinion in this matter. See Blachy v. Butcher, 221 F.3d 896 (6th Cir. 2000), cert. denied, 532 U.S. 994 (2001).

Harbor Cove Phase II on the entire 40.81 acres. From 1981 to 1984, LTDC constructed and sold condominiums on portions of the acreage that included the 17.83 acres. Nine of those condominiums were sold to the plaintiffs or their predecessors-in-interest.

On May 8, 1984, Alexander formed H.C. Development Company ("HCDC"). He was the majority stockholder, president, and a director of this new corporation. In late October of 1984, Alexander signed a warranty deed on behalf of LTDC, purporting to convey 12.60 of the 17.83 acres to HCDC. Alexander, as president of HCDC, then signed a master deed creating Harbor Cove Phase III on the 12.60 acres. He granted Northwestern Savings and Loan Association a mortgage on this acreage to secure a construction loan. After Lawyers Title issued a title commitment for the transaction, HCDC constructed condominiums on the development. HCDC began selling the condominiums in December of 1985. Three of these condominiums were sold to the plaintiffs or their predecessors-in-interest.

In the deeds conveying the condominiums to the plaintiffs, Alexander, acting as president of both LTDC and HCDC, represented that one or the other of those entities held title to the particular condominium being sold. He also stated under oath on several occasions that LTDC was the owner of the Phase II property and that HCDC was the owner of the Phase III property.

In August of 1988, the Internal Revenue Service ("IRS") issued an assessment against Mr. and Mrs. Butcher for approximately $61,000 in unpaid federal income taxes that arose from the taxable year 1986. On September 9, 1988, the United States, acting on behalf of the IRS, filed a tax lien[2] against Mr. and Mrs. Butcher's property seeking to attach Rosemary's and Alexander's interest in the 17.83 acres.

---

[2] The unpaid balance of the tax liability now exceeds $150,000.

3

On March 1, 1991, Rosemary filed for bankruptcy. The condominium owners—who had been paying the property taxes on the 17.83 acres over the years—subsequently learned of the July 12, 1978, conveyance from LTDC to Mr. and Mrs. Butcher. On September 17, 1991, Rosemary amended her bankruptcy schedules to claim ownership of the 17.83 acres. Prior to that date, Mr. and Mrs. Butcher had taken no action to claim title to any portion of the property. Alexander quitclaimed his interest in the 17.83 acres to Rosemary on October 31, 1991. Alexander died in December 1991.

### B. Procedural history

Rosemary filed her Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Michigan. Seven and a half months later, Lawyers Title and the condominium owners to whom Lawyers Title issued title insurance policies sued Alexander, LTDC, HCDC, and the IRS in Emmet County Circuit Court, Michigan. The plaintiffs did not sue Rosemary because she was under the protection of the bankruptcy court.

On November 18, 1991, the IRS removed the state court action to the United States District Court for the Western District of Michigan. The district court stayed the Western District case while the plaintiffs pursued an adversary proceeding in Rosemary's bankruptcy case. In both actions, the plaintiffs sought a constructive trust.

Subsequent to Alexander's death in late 1991, Rosemary and Robert Butcher (Rosemary's brother-in-law and co-personal representative of Alexander's estate) moved the district court to dismiss the plaintiff's case because Alexander's estate had not been substituted as a party following his death. The plaintiffs responded by moving to transfer venue to the bankruptcy court. On August 16, 1993, the district court denied the motion to dismiss, holding

4

that the order staying the district court action pending the adversary proceeding in the bankruptcy court tolled the time limit for substituting the estate of Alexander into the suit under Rule 25(a)(1) of the Federal Rules of Civil Procedure. The district court also granted the plaintiffs' motion to transfer venue to the Bankruptcy Court for the Eastern District of Michigan.

The plaintiffs' Western District case and Rosemary's bankruptcy proceeding were consolidated on November 18, 1993, in the bankruptcy court. On February 11, 1994, the bankruptcy court substituted Rosemary and Robert Butcher[3] for Alexander.

In late November of 1994, the bankruptcy court granted the plaintiffs' motion for summary judgment and imposed a constructive trust over the 17.83 acres for the condominium owners' benefit. The bankruptcy court also concluded that the constructive trust related back to 1978, thus predating and superseding the IRS's 1988 tax lien.

The defendants appealed the bankruptcy court's ruling to the United States District Court for the Eastern District of Michigan. On July 31, 1995, the bankruptcy court's award of summary judgment to the plaintiffs was reversed by the district court. The district court's decision was based upon the case of XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.), 16 F.3d 1443 (6th Cir.1994), in which this court held that a bankruptcy court may not impose a constructive trust over estate property. See id. at 1452-53. Because of In re Omegas Group, the district court concluded that the proper remedy would be to have the debt declared nondischargeable. The case was then remanded to the bankruptcy court.

The bankruptcy court transferred the plaintiff's claim for a constructive trust over

---

[3] When jointly referring to Rosemary and Robert Butcher, the Court will hereafter refer to them as "the Butchers."

Rosemary's nonbankruptcy interest—the interest she acquired from Alexander—back to the Western District of Michigan. It also lifted the automatic stay in order to permit the plaintiffs to name Rosemary as a defendant and to add a fraudulent conveyance claim.

After the case was transferred back to the Western District, the parties filed cross-motions for summary judgment. The district court granted the plaintiffs' motion, concluding that a constructive trust was appropriate. The district court further ruled that the Butchers' arguments relating to standing, jurisdiction, and the statute of limitations were meritless. The court held that a constructive trust arose on July 12, 1978, the date LTDC conveyed the 17.83 acres to Rosemary and Alexander. Because the district court retroactively applied the constructive trust as of that date, it concluded that the 1988 federal tax lien was subordinate to the plaintiffs' interest in the property and therefore ineffective.

The Butchers filed a motion for reconsideration, arguing that a constructive trust should not have been imposed over Rosemary's nonbankruptcy interest because she had not been served with a summons and a copy of the amended complaint. The district court acknowledged this oversight and ordered the plaintiffs to serve Rosemary with a summons and a copy of the amended complaint within fourteen days. It further ordered Rosemary to file a response, setting forth her reasons why a constructive trust should not be imposed over her nonbankruptcy interest in the 17.83 acres. Additionally, the United States filed a motion to clarify and reconsider, arguing that the district court appeared to be placing the constructive trust over Rosemary's bankruptcy and nonbankruptcy interests alike. The Butchers filed a supplemental motion for reconsideration arguing that summary judgment should be denied, but acknowledging that Rosemary's attorney had received a summons and a copy of the amended complaint pursuant to

6

an agreement with opposing counsel.  Rosemary then filed a response, setting forth her opposition to the constructive trust.

Other than finding that the constructive trust was overbroad, the district court rejected all of the arguments in the motion for reconsideration, the supplemental motion for reconsideration, and the Government's motion to clarify.  Because the scope of the constructive trust was unclear, the district court declared in a supplemental order that the scope of the constructive trust would be limited to the nonbankruptcy portion of Rosemary's overall interest in the 17.83 acres.  The Butchers filed another motion to reconsider, and the district court denied it.  The Butchers appealed.

On appeal, this Court held that the district court had jurisdiction  over the nonbankruptcy portion of Rosemary's interest in the 17.83 acres; that the interest in the property Rosemary received from Alexander in October 1991 was not part of her bankruptcy estate; that neither Alexander's quitclaim deed nor his death extinguished the constructive trust claim; that the owners and Lawyers Title had standing to bring the constructive trust claim; that removal to federal court was proper despite the fact that the owners and Lawyers Title had named the IRS as a defendant rather than the Government; that the constructive trust claim was not time-barred; and that summary judgment was proper as to Rosemary. See Blachy, 221 F.3d at 905-10.  The Court upheld the imposition of the constructive trust on Rosemary's nonbankruptcy interest in the 17.83 acres but found that the constructive trust did not defeat the federal tax lien. See id. at 903-06.  After unsuccessfully petitioning this Court for a rehearing, Rosemary filed an unsuccessful petition for writ of certiorari. See Blachy v. Butcher, 532 U.S. 994, 121 S.Ct. 1653, 149 L.Ed.2d 636 (2001).

7

On January 3, 2003, Rosemary moved the district court to reconsider pursuant to Federal Rule of Civil Procedure 60(b)(4), (5), and (6). She alleged that the district court lacked subject matter and personal jurisdiction. She requested relief from the district court's December 16, 1998, summary judgment order and its March 10, 1999, motion for reconsideration. The district court denied Rosemary's motion because it was untimely and the arguments she made would not have changed the case's outcome. The district court also held that Rosemary's motion was an improper attempt to get a lower court to alter a higher court's ruling. Lastly, the district court noted that all of the arguments Rosemary presented in her motion had been previously raised and rejected by itself and this Court.

Rosemary moved for reconsideration of the order denying her motion for Rule 60(b) relief. She also argued that Alexander had not conveyed his entireties interest in the property to her when he quitclaimed in October 1991. The district court denied Rosemary's motion for the reasons stated in its March 17, 2003, order. Lawyers Title moved for sanctions and the district court awarded it the attorneys' fees and expenses incurred in responding to Rosemary's meritless motion. The Butchers timely appealed.

## STANDARD OF REVIEW

This Court reviews a district court's denial of a Rule 60(b) motion for an abuse of discretion. See Hood v. Hood, 59 F.3d 40, 42 (6th Cir.1995). An abuse of discretion occurs if there is "a definite and firm conviction that the trial court committed a clear error of judgment." Cincinnati Ins. Co. v. Byers, 151 F.3d 574, 578-79 (6th Cir.1998) (quoting Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir.1989)).

## ANALYSIS

8

### A. The Butchers' Appeal of the Rule 60(b) Motion

Rule 60(b)(6) is properly invoked only in "unusual and extreme situations where principles of equity *mandate* relief." Olle v. Henry & Wright Corp., 910 F.2d 357, 365 (6th Cir.1990). District courts can allow Rule 60(b) motions only for the following reasons:

> 1) mistake, inadvertence, surprise, or excusable neglect; 2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); 3) fraud, . . . misrepresentation, or other misconduct of an adverse party; 4) the judgment is void; 5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or 6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Fed.R.Civ.P. 60(b).

Rosemary sought reconsideration pursuant to Rule 60(b)(4), (5), and (6), alleging that the district court lacked removal jurisdiction; no court had jurisdiction over the acreage because it was still being held in tenancy by the entirety at the time suit was originally filed; Lawyers Title defrauded the court by making various factual misstatements; the Michigan state court had exclusive jurisdiction because Alexander's interest in the acreage was part of his probate estate; Lawyer's Title lacked standing or a right of subrogation; and Appellees' counsel, the United States, and the bankruptcy trustee defrauded the court and Rosemary by arranging for the federal tax lien to be paid from the proceeds of the sale of the 17.83 acres held in the bankruptcy estate.[4]

These claims, like all claims under Rule 60(b)(4), (5), and (6), must be filed "within a

---

[4] The Butchers' brief to this Court also alleges a claim based on the Fifth Amendment. In violation of Federal Rule of Appellate Procedure 28(a)(9)(A), the brief does not contain any contention or citation to authority with respect to a Fifth Amendment claim. Thus, the Court will not consider the Butchers' Fifth Amendment claim.

9

reasonable time." Id. The flexible nature of this time frame is not unlimited. In fact, the Court has held that a motion filed pursuant to Rule 60(b)(4) and (6) is untimely where more than three years have passed between the time the motion was filed and judgment was entered. See Ohio Cas. Ins. Co. v. Pulliam, No. 96-6522, 1999 WL 455336, *2 (6th Cir. June 23, 1999).

The district court entered summary judgment against Rosemary on December 14, 1998, and entered its final order on March 10, 1999. Rosemary did not file her Rule 60(b) motion until January 3, 2003. Rosemary argues that this was not an unreasonable length of time given that the bankruptcy portion of the proceedings did not end until October 6, 2002. However, Rosemary's Rule 60(b) motion did not seek reconsideration of the bankruptcy court's order; rather, her motion was aimed at the district court's 1998 and 1999 orders. Because the district court's orders were the subject of Rosemary's motion, their entry dates are the relevant marks by which to measure the timeliness of Rosemary's motion. More than three years passed between the time the district court entered its orders and the time Rosemary filed her Rule 60(b) motion. This is an unreasonable delay. See Pulliam, 1999 WL 455336, at *2. Thus, the district court properly denied Rosemary's Rule 60(b) motion as untimely.[5]

In addition to being untimely, Rosemary's claims are meritless. As this Court explained on the previous appeal, the district court had subject matter jurisdiction, removal was appropriate, and Lawyer's Title had standing to sue pursuant to the subrogation clause in its title

---

[5] As an alternate basis for its decision, the district court denied Rosemary's motion because the facts did not warrant relief from judgment and because the motion impermissibly sought to rehash the underlying judgment. These are both valid reasons to deny a Rule 60(b) motion. See Browder v. Dir., Dep't of Corr., 434 U.S. 257, 263 n. 7 (1978) (appeal from an order denying a Rule 60(b) motion does not bring up for review the underlying judgment disposing of the complaint); Feathers v. Chevron U.S.A., Inc., 141 F.3d 264, 268 (6th Cir.1998) (appellate review of a denied Rule 60(b) motion is limited to "whether one of the specified circumstances exists in which [an appellant] is entitled to reopen the merits of his underlying claims."); Lewis v. Alexander, 987 F.2d 392, 396 (6th Cir.1993) (a Rule 60(b) motion must be denied if there are no facts warranting relief).

10

insurance policy. See Blachy, 221 F.3d at 906-10. These conclusions barred the district court from granting relief for these claims. See United States v. Real Property Numbered as 249 S. Main Street, 906 F.Supp. 1155, 1159 (S.D. Ohio 1995) ("A district court . . . does not have jurisdiction to alter an appellate ruling where the appellate court has already considered and rejected the basis for relief cited in the Rule 60(b) motion."). Moreover, the Butchers' Rule 60(b) motion did not argue that the case was improperly removed or that the Michigan state court had exclusive jurisdiction. This Court does not generally hear issues raised for the first time on appeal. See Bailey v. Floyd County Bd. of Educ., 106 F.3d 135, 143 (6th Cir. 1997). The Butchers do not set forth any reason for the Court to depart from the general rule.

Finally, the Butchers cannot establish fraud upon the court. Fraud upon the court is conduct: 1) on the part of an officer of the court; 2) that is directed to the judicial machinery itself; 3) that is intentionally false, wilfully blind to the truth, or is in reckless disregard for the truth; 4) that is a positive averment or a concealment when one is under a duty to disclose; 5) that deceives the court. See Demjanjuk v. Petrovsky, 10 F.3d 338, 348 (6th Cir.1993). The Butchers do not discuss any of these elements or apply them to the facts of the case. Even if they had, any fraud related to the sale and distribution of assets in 2001 and 2002 could not have invalidated the district court's 1998 and 1999 orders.

### B. Sanctions

The district court sanctioned Rosemary and her counsel, Robert Butcher, jointly pursuant to Rule 11 and 28 U.S.C. § 1927. This Court reviews the district court's imposition of these sanctions for abuse of discretion. See Tropf v. Fid. Nat'l Title Ins. Co., 289 F.3d 929, 936 (6th Cir. 2002) (discussing Rule 11); Ridder v. City of Springfield, 109 F.3d 288, 298 (6th Cir. 1997)

11

(citation omitted) (discussing § 1927).

In this Circuit, "the test for imposition of Rule 11 sanctions is whether the individual's conduct was reasonable under the circumstances." See Tropf , 289 F.3d 939 (quotation omitted); see also Pittman v. Michigan Corrections Organization, 2005 WL 65516, *3 (6th Cir.Jan. 7, 2005). Rule 11(b) provides that:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>     (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>     (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>     (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>     (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

See Fed.R.Civ.P. 11(b).

After "notice and a reasonable opportunity" to respond are given, a court may sanction a party, attorney, or law firm, that has violated or is responsible for violating Rule 11(b). See Fed.R.Civ.P. 11(c).

Here, the district court sanctioned Rosemary because her Rule 60(b) motion was "objectively unreasonable." Such a characterization is patently sound. After all, Rosemary's claims had been rejected in some form or fashion by the district court and the Sixth Circuit alike. Thus, the district court correctly determined that Rosemary did not have a good faith basis for filing her Rule 60(b) motion. Sanctions were, therefore, appropriate under Rule 11(b)(2).

12

The district court also found that sanctions were appropriate under § 1927. Section 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

As the foregoing section of this opinion attests, Rosemary's Rule 60(b) motion was objectively meritless. Its untimeliness and baselessness were obvious. Similarly, there can be no doubt that the Appellants' litigation strategy vexatiously and unreasonably multiplied these proceedings. From the time this case entered the federal court system in 1991 through the present date, Rosemary has not obtained a single successful judgment. She and her counsel, Robert Butcher, have contested issues they had no business contesting and, in the course of their conduct, earned the sanctions the district court imposed under Rule 11 and § 1927.

The Butchers' conduct persists even on appeal. Upon a separately filed motion or notice from a court, Federal Rule of Appellate Procedure 38 allows a court to award "just damages and single or double costs to the appellee." Fed.R.App.P. 38. Sanctions are appropriate under Rule 38 where litigation is frivolous, where "the result is obvious or where the appellant's argument is wholly without merit." See Pieper v. Am. Arbitration Ass'n, 336 F.3d 458, 465 (6th Cir. 2003).

The Appellees move the Court to sanction the Butchers pursuant to Rule 38 and § 1927 and the Court has a difficult time imagining a case where sanctions would be more just. The result of the Butchers' appeal was obvious since their arguments were either untimely, could not be raised for the first time to this Court, or were objectively meritless. The Butchers must bear the consequences of their actions and be deterred from further folly.

**CONCLUSION**

13

We AFFIRM the district court's decision. Furthermore, we GRANT the Appellees' motion for sanctions on appeal under Rule 38 and § 1927. Appellees shall file an affidavit within fifteen days of this order setting forth the hourly rates of its counsel and the number of hours spent in defending this appeal.