RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0156p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────────

IN RE: VISTA-PRO AUTOMOTIVE, LLC,

*Debtor*.

─────────────────────────────────────────

JEANNE ANN BURTON, Chapter 7 Trustee for Vista-Pro
Automotive, LLC,

*Plaintiff-Appellee*,

*v.*

CONEY ISLAND AUTO PARTS UNLIMITED, INC.,

*Defendant-Appellant*.

No. 23-5881

───────────────────

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:22-cv-00804—Waverly D. Crenshaw Jr., District Judge.

United States Bankruptcy Court for the Middle District of Tennessee at Nashville.
Nos. 3:14-bk-09118; 3:15-ap-90079—Randal S. Mashburn, Bankruptcy Judge.

Decided and Filed: July 26, 2024

Before: BOGGS, McKEAGUE, and LARSEN, Circuit Judges.

───────────────────

## COUNSEL

**ON BRIEF:** Daniel Ginzburg, THE GINZBURG LAW FIRM, P.C., Freehold, New Jersey, for
Appellant. Phillip G. Young, Jr., THOMPSON BURTON PLLC, Franklin, Tennessee, for
Appellee.

LARSEN, J., delivered the opinion of the court in which BOGGS, J., joined.
McKEAGUE, J. (pp. 11–20), delivered a separate dissenting opinion.

—————————

**OPINION**

—————————

LARSEN, Circuit Judge.  Vista-Pro Automotive, LLC, entered bankruptcy proceedings in 2014 and, in an adversary proceeding, filed a complaint against Coney Island Auto Parts Unlimited, Inc., to recover on unpaid invoices.  Coney Island never responded, so the bankruptcy court entered a default judgement against it.  Years later, Coney Island moved to vacate the default judgment as void.  The bankruptcy court and the district court denied Coney Island's motion as untimely.  We AFFIRM.

I.

In November 2014, creditors of Vista-Pro, a Nashville auto-parts corporation, commenced involuntary Chapter 7 liquidation proceedings in the bankruptcy court for the Middle District of Tennessee.  The parties subsequently agreed to convert the litigation into Chapter 11 restructuring proceedings.

In February 2015, Vista-Pro opened an adversary proceeding against Coney Island, a New York corporation, seeking to collect about $50,000 in unpaid invoices.  Vista-Pro mailed a summons and complaint to Coney Island at its McDonald Avenue address in Brooklyn.  The summons and complaint were addressed to "Coney Island Auto Parts Unltd., Inc.," without any corporate officer's or other individual's name on the mailing.  According to New York Department of State records, the corporation itself, rather than an individual, was listed as the registered agent for service of process.  Coney Island did not respond, so, at Vista-Pro's request, the clerk of the bankruptcy court entered a default in April 2015.

Vista-Pro then moved for a default judgment and mailed notice of the motion and relevant materials to Coney Island's McDonald Avenue address.  Again, Vista-Pro did not identify any individual on the mailing.  In May 2015, the bankruptcy court entered a default judgment against Coney Island.

On motion of Vista-Pro's creditors, the court reconverted the proceedings into a Chapter 7 liquidation and appointed a trustee. In April 2016, the trustee sent a demand letter to Coney Island to arrange satisfaction of the May 2015 default judgment. The letter was addressed to Daniel Beyda, whom the trustee had identified as Coney Island's CEO. Coney Island concedes that it received this letter.

The trustee continued efforts to collect on the judgment over the next several years. In February 2021, after registering Vista-Pro's default judgment in New York, the trustee served a subpoena on Coney Island's New York bank, which placed a $97,000 hold on Coney Island's account.

In October 2021, Coney Island moved in the Southern District of New York bankruptcy court to vacate the default judgment entered by the Middle District of Tennessee bankruptcy court. The court denied that motion, instructing Coney Island that it should seek relief from the Middle District of Tennessee court. Coney Island did so in July 2022, moving under Federal Rule of Civil Procedure 60(b)(4) to vacate the May 2015 default judgment. *See* Fed. R. Bankr. P. 9024 (making Fed. R. Civ. P. 60 applicable in bankruptcy proceedings). Coney Island argued that the default judgment was void because Vista-Pro failed to properly serve it in the adversary proceeding and, thus, the bankruptcy court never acquired personal jurisdiction over it. Bankruptcy Rule 7004(b)(3) allows service on a corporation to be accomplished "by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." Fed. R. Bankr. P. 7004(b)(3). But Vista-Pro simply addressed its mailed summons and complaint to "Coney Island Auto Parts Unltd., Inc." And, Coney Island argued, the trustee could not invoke laches or any other equitable defense because, in its view, there is no time limit for filing a motion to vacate a void judgment.

The bankruptcy court denied the Rule 60(b)(4) motion. Under Sixth Circuit precedent, it explained, "courts retain discretion to deny motions to set aside even potentially void judgments when, as a threshold matter, the motions are not made within a reasonable time." Order, D. 60 in No. 15-ap-90079, p. 5. Coney Island admitted that it had actual notice of the default judgment no later than April 2016, and, in the court's view, Coney Island's years-long delay in moving to

vacate the judgment was unreasonable.  The district court affirmed on appeal, concluding that the "delay [wa]s unreasonable" and that Coney Island "offer[ed] nothing to justify the delay." Order, R. 18, PageID 693.  Coney Island timely appealed.

## II.

Coney Island says that the courts below erred by denying its motion to vacate as untimely.  In its view, a motion to vacate a void judgment brought under Federal Rule of Civil Procedure 60(b)(4) is subject to no time limit at all.

Rule 60(b) provides that, "[o]n motion and just terms, [a] court may relieve a party or its legal representative from a final judgment, order, or proceeding" for five specified reasons or for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b).  One enumerated ground for which relief is authorized is that "the judgment is void."  Fed. R. Civ. P. 60(b)(4).  A judgment is void if it "is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard."  *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010).

Rule 60(c)(1) governs the time for filing a motion under Rule 60(b).  Such motions "must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."  Fed. R. Civ. P. 60(c)(1).  Rule 60(c)(1) speaks in plain terms:  "All" Rule 60(b) motions "must be filed 'within a reasonable time.'"  *Kemp v. United States*, 596 U.S. 528, 533 (2022) (quoting Fed. R. Civ. P. 60(c)(1)).  "But for some"—namely, motions brought under Rule 60(b)(1), (2) or (3)—"that 'reasonable time' may not exceed one year."  *Id.*  Coney Island brought its motion under Rule 60(b)(4), so the text says that its motion had to be filed within a "reasonable time," though not necessarily within one year of judgment.

This court's precedent comports with the text.  *United States v. Dailide* concerned a challenge to a court order revoking Dailide's citizenship. 316 F.3d 611, 614 (6th Cir. 2003). Dailide moved to vacate the judgment under Rule 60(b)(4) on the ground that the district court had entered the citizenship-revocation order without subject-matter jurisdiction.  *Id.* at 617.  The district court rejected the challenge, and we affirmed.  We explained that a Rule 60(b)(4) motion

"is only cognizable if brought within a reasonable time." *Id.* And we concluded that Dailide's four-year delay in bringing the motion was not reasonable; so "his prayer for relief [wa]s untimely." *Id.* at 618. We then proceeded to hold, in the alternative, that the motion failed on its merits because the district court did have jurisdiction to enter the revocation order. *See id.* at 618–19. And we summed up our opinion by explaining that our decision rested on both grounds: "Dailide's attack on the subject-matter jurisdiction of the federal judiciary" to revoke his citizenship "was untimely *and* lacks merit." *Id.* at 619 (emphasis added).

*Dailide* presents a classic example of alternative holdings: although either the timeliness determination or the jurisdictional determination presented a sufficient ground on which to rest the decision, *Dailide* chose to give "two independent reasons for the ruling." *Wright v. Spaulding*, 939 F.3d 695, 701 (6th Cir. 2019); *see also Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949) ("[W]here a decision rests on two or more grounds, none can be relegated to the category of obiter dictum."). Each of these independent reasons "contribute[d] to the judgment," and *Dailide* "actively *applied* the conclusion" on each issue to the case at hand. *Wright*, 939 F.3d at 701. First, *Dailide* announced the timeliness requirement and held that Dailide's four-year delay failed that rule, and second, *Dailide* analyzed the statutory jurisdiction of the district court and held that the court had possessed jurisdiction to enter the citizenship-revocation judgment against Dailide. The timeliness determination and the jurisdictional determination are both holdings of *Dailide*.

The dissent contends that *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105 (6th Cir. 1995), conflicts with *Dailide* and that *Antoine* controls because it was decided first. *See Salmi v. Sec'y of Health & Human Servs*., 774 F.2d 685, 689 (6th Cir.1985); Dissenting Op. at 15. We see no conflict. *Antoine* did not hold that a court may never deny a Rule 60(b)(4) motion on timeliness grounds. It did not even address timeliness. Although one can use the dates referenced in *Antoine*'s statement of facts to detect a five-year filing delay, the court made no mention of delay, and there is no reason to believe that any party raised a timeliness objection to the Rule 60(b)(4) motion brought there. *See Antoine*, 66 F.3d at 107–09. So the fact that *Antoine* proceeded to the merits—and determined that the judgment was not void, *id.* at 109—doesn't tell us anything about what a court faced with a timeliness objection must or may do. To form a

holding, "it must be clear that the court considered the issue and consciously reached a conclusion about it." *Wright*, 939 F.3d at 702. *Antoine* did not consider the timeliness of the motion before it, so it hardly could have declared all timeliness objections out of bounds. *See Antoine*, 66 F.3d at 108–09.

In similar fashion, the dissent claims that the Supreme Court's subsequent decision in *Espinosa*, 559 U.S. at 271, "confirms that untimeliness alone cannot be the basis for denying" a Rule 60(b)(4) motion. Dissenting Op. at 15–16. But, like *Antoine*, *Espinosa* did not consider whether the motion was timely under Rule 60(c)(1); it simply decided what kinds of defects make a judgment void within the meaning of Rule 60(b)(4). *Espinosa*, 559 U.S. at 271–72. So *Espinosa* does not abrogate our caselaw on timeliness either. Contrary to the dissent's suggestion, *Northridge Church v. Charter Township of Plymouth*, 647 F.3d 606, 611 (6th Cir. 2011), does not say otherwise. *See* Dissenting Op. at 16. That case, too, did not address the timeliness question.[1]

Coney Island and the dissent next contend that *Dailide* is distinguishable because it concerned a judgment alleged to be void for lack of subject-matter jurisdiction. Here, by contrast, the source of the alleged defect is personal jurisdiction. That matters, in Coney Island's view, because a judgment "entered without personal jurisdiction . . . implicates due process." Appellant Br. at 9–10; *see also* Dissenting Op. at 16–17. This argument fails to persuade. To be clear, Coney Island does not mount a constitutional attack on Rule 60. It argues only that we should confine *Dailide*'s exposition of the Rule to judgments void for lack of subject-matter jurisdiction. But Rule 60 speaks to "void" judgments generally, and so it cannot bear a construction that would cleave off some void judgments, while leaving the rest. That is answer enough. In any event, a judgment is not *more void* for lack of personal jurisdiction than for lack of subject-matter jurisdiction. If a court lacks either form of jurisdiction, it is "powerless to

---

[1]We are puzzled by the dissent's characterization of *Klapprott v. United States*, 335 U.S. 601 (1949), as "explicitly assum[ing] that no 'definite time limit' applied to Rule 60(b)(4) motions." Dissenting Op. at 19. No opinion garnered a majority in that case, and the "definite time limit" language comes from Justice Reed's dissent. 335 U.S. at 624. Justice Reed seems to have been referencing Justice Black's opinion, joined by Justice Douglas, which stated that Rule 60(b) "authorizes a court to set aside 'a void judgment' without regard to the limitation of a year applicable to motions to set aside on some other grounds." *Id.* at 609. That statement is entirely consistent with the plain meaning of the Rule that we applied in *Dailide*, and it does not imply that the indefinite "reasonable time" limit does not apply.

proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (citation omitted); *see Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 94–95 (1998). Of course, the "character" of these "jurisdictional bedrocks unquestionably differs": the requirement of jurisdiction over the subject matter is "nonwaivable and delimits federal-court power," while the requirement of jurisdiction over the person is "waivable and protect[s] individual rights." *Ruhrgas*, 526 U.S. at 583. But that hardly makes a judgment obtained without personal jurisdiction more void than one obtained without subject-matter jurisdiction. There is no carve-out from *Dailide*'s holding for attacks based on an alleged defect in personal jurisdiction. *See also Days Inn Worldwide, Inc. v. Patel*, 445 F.3d 899, 905–06 (6th Cir. 2006)

We are bound by *Dailide*'s holding that Rule 60(b)(4) motions are subject to a reasonable-time limitation. *See Salmi*, 774 F.2d at 689. And we have no occasion here to question the district court's application of this rule. Coney Island's sole argument on appeal is that Rule 60(c)(1)'s reasonable-time requirement does not apply; it does not argue, alternatively, that, if the rule applied, its delay was reasonable. We therefore affirm the denial of Coney Island's motion to vacate the May 2015 default judgment.

III.

We acknowledge that our circuit appears to be out of step with the majority view, which holds that Rule 60(b)(4) motions may be brought at any time. *See, e.g.*, *United States v. One Toshiba Color Television*, 213 F.3d 147, 157 (3d Cir. 2000) (en banc) (collecting cases); *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661–62 (1st Cir. 1990). We must follow our own circuit precedent regardless.

Our precedent is also not without virtue. First, ours is the only reading that is faithful to the text of Rule 60(c)(1), which by its plain terms imposes a reasonable-time requirement on *each* of the enumerated grounds in Rule 60(b). *See Kemp*, 596 U.S. at 533 ("All [Rule 60(b) motions] must be filed 'within a reasonable time.'"); *One Toshiba*, 213 F.3d at 157 (acknowledging that "the text of the rule dictates that the motion will be made within 'a reasonable time,'" but rejecting that interpretation because of contrary out-of-circuit authority). Rule 60(c)(1) even provides a special one-year time limit for grounds (1), (2), and (3),

demonstrating that the drafters were deliberate in framing the Rule's limitations and knew how to establish different standards for the various grounds. But they provided no special rule for motions brought under ground (4). If the drafters of the rule meant that a district court may never dismiss a Rule 60(b)(4) motion as untimely, then commanding that such motions "must be made within a reasonable time" was an odd way to express it.

The text's lack of a special time provision for void judgments appears particularly significant because, in 1946, when Rule 60 was amended to its present substantive form, there was a well-established rule that void judgments could be vacated at any time. *See, e.g.*, *Pollitz v. Wabash R. Co.*, 180 F. 950, 951 (C.C.S.D.N.Y. 1910); *Woods Bros. Construction Co. v. Yankton County*, 54 F.2d 304, 309 (8th Cir. 1931); James W. Moore & Elizabeth B. A. Rogers, *Federal Relief from Civil Judgments*, 55 Yale L.J. 623, 692 (1946). Whatever the merits of that traditional rule, we can assume the Rules Committee's familiarity with it. *See* 3 Proceedings of the Advisory Committee on Rules for Civil Procedure, Mar. 25–28, 1946, at 555 (noting this rule). To accommodate this rule, the Committee could have treated void judgments differently; but Rule 60 makes no exception for them. *See id.* at 610–15 (discussing and adopting language requiring "that all motions should be made within a reasonable time"); Note, *Relief from Civil Judgments*, 61 Yale L.J. 76, 81 n.24 (1952) (observing that amended Rule 60's application of a reasonable-time requirement for motions to vacate void judgments was "anomalous").

Second, applying a reasonable-time limitation to Rule 60(b)(4) motions comports with basic equitable principles. *Cf. Assmann v. Fleming*, 159 F.2d 332, 336 (8th Cir. 1947) ("[A] motion to vacate a judgment is . . . a legal remedy . . . ; yet the relief is equitable in character and must be administered upon equitable principles."). And we are not the first to leave at least *some* place for equitable considerations in reviewing challenges to allegedly void judgments. The Second Circuit held, for example, that a Rule 60(b)(4) motion was properly denied as untimely where the movant could have raised its jurisdictional challenge in its prior Rule 60(b) motion. *State Street Bank and Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 179 (2d Cir. 2004). *See also Katter v. Ark. La. Gas Co*., 765 F.2d 730, 734–35 (8th Cir. 1985) (estoppel); Restatement (Second) of Judgments § 66 (Am. L. Inst. 1982) (estoppel); *Beller & Keller v. Tyler*, 120 F.3d 21, 23–24 (2d Cir. 1997) (in dictum, waiver and unreasonable delay); *cf. Jackson v.*

*FIE Corp.*, 302 F.3d 515, 523 (5th Cir. 2002) (suggesting that delay may warrant denial of a Rule 60(b)(4) motion in "extraordinary circumstances"); *Days Inn*, 445 F.3d at 905–06. Coney Island's position—that there is *no* time limit for filing a Rule 60(b)(4) motion—would permit a party to engage in flagrantly inequitable conduct—for instance by consciously sleeping on its rights in order to cause prejudice to the judgment holder, undermine the finality of long-forgotten judgments, or upset reliance interests. It is not clear why Rule 60 should be given an atextual meaning to permit such results.

Of course, a void judgment is exceptional: it is premised on a fundamental "jurisdictional error" or on "a violation of due process that deprives a party of notice or the opportunity to be heard." *Espinosa*, 559 U.S. at 271. Acknowledging this, however, does not tell us what to *do* about a void judgment. We might think that the fundamental infirmity of a void judgment is grave enough to outweigh many other considerations. But the text of Rule 60 evinces a belief that, in some circumstances, a court may reasonably decide that a motion to vacate has come too late. Our precedent simply gives effect to the concern for timeliness embodied in the language of Rule 60. The Rules Committee could have decided, and yet may still decide, that motions to vacate void judgments should be subject to no time constraints at all. But whatever the pull of the "ancient lore and mystery" predating Rule 60, *see* Dissenting Op. at 8, we cannot find such a judgment reflected in the current text of the Rule or in our precedent.

Finally, nothing about our interpretation of Rule 60 requires unfairness to a party who is subject to a void judgment. The Rule's reasonable-time limitation anticipates a fact-specific inquiry that can account for a variety of circumstances, including a party's innocent delay in learning of a void judgment against it or in learning why the judgment is void. Although the one-year limit for grounds (1), (2), and (3) runs from "the entry of the judgment or order or the date of the proceeding," Fed. R. Civ. P. 60(c)(1), the "reasonable time" clock governing grounds (4), (5), and (6) generally "begins ticking when the movant is or should be aware of the factual basis for the motion," *Ghaleb v. Am. Steamship Co.*, 770 F. App'x 249, 249 (6th Cir. 2019). And what constitutes a "reasonable time" for purposes of Rule 60 "ordinarily depends on the facts of a given case including the length and circumstances of the delay, the prejudice to the opposing party by reason of the delay, and the circumstances compelling equitable relief." *Olle v. Henry*

*& Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990); *see, e.g.*, *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefits Fund*, 249 F.3d 519, 528–29 (6th Cir. 2001) (taking into account reliance interests, changes in decisional law, and the passage of time in ruling on a Rule 60(b) motion); *General Medicine, P.C. v. Horizon/CMS Health Care Corp.*, 475 F. App'x 65, 76 (6th Cir. 2012) (considering the unexplained delay between the movant's "notice" of a judgment and its filing of a Rule 60(b) motion). So any notice concerns that arise in the context of void judgments can be properly accounted for in the reasonable-time calculation.

One wrinkle on this last point is worth mentioning. The Supreme Court has stated that a defendant who doubts a court's jurisdiction has an "election" to make. *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931). The defendant may "submit[] to the jurisdiction of the court for the limited purpose of challenging jurisdiction," and in so doing "agree[] to abide by that court's determination on the issue of jurisdiction," subject to any appeal. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982). Alternatively, the defendant "is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Id.* Depending on the scope and basis of this procedural principle, it may limit some applications of a reasonable-time requirement for Rule 60(b)(4) motions. One court has held, in fact, that a defaulting defendant "may assert his jurisdictional objection" "*[w]hen enforcement of the default judgment is attempted.*" *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1547 (D.C. Cir. 1987) (R. Ginsburg, J.) (emphasis added); *see also Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 855–57 (7th Cir. 2011). If this understanding is right, then perhaps the reasonable-time clock does not start running until enforcement is first attempted. But we need not decide this question. Coney Island has not argued that it brought its Rule 60(b)(4) motion within a reasonable time under any understanding of that standard, so we have no occasion to consider these issues here.

\* \* \*

We AFFIRM.

---

**DISSENT**

---

McKEAGUE, Circuit Judge, dissenting.  In late 2014, a Nashville auto-parts corporation in financial straits entered bankruptcy proceedings.  To recoup as much of its debt as possible, the corporation—Vista-Pro Automotive—sought to collect payment on unpaid invoices from a number of other businesses.  One of those businesses was Coney Island Auto Parts Unlimited.  In an adversary proceeding, Vista-Pro filed a complaint seeking to collect nearly fifty thousand dollars from Coney Island.  Vista-Pro did so without ensuring that it had properly served Coney Island with notice of the lawsuit.  The bankruptcy court entered a default judgment against Coney Island, and Vista-Pro—later, its successor-in-interest, the Chapter 7 trustee—has attempted to reap the benefits of that improper judgment for more than nine years.

I would hold that Coney Island is not categorically barred solely on timeliness grounds from filing a Rule 60(b)(4) motion for relief from final judgment.  I believe we are not bound by the timeliness rule announced in *United States v. Dailide*, 316 F.3d 611 (6th Cir. 2003).  And regardless of whether we are bound, I firmly believe this Court should renounce that rule and join every other federal circuit in holding that the mere passage of time cannot render a void judgment valid.  The majority's holding deepens a circuit split that places the Sixth Circuit against the weight of every other federal court in the country.  Courts have no power to enforce void judgments.  Because the record before us—as assumed by the bankruptcy court below—shows the judgment to be void on its face, I would vacate the bankruptcy court's determination that Coney Island's motion was untimely and remand for the court to consider whether the judgment was, in fact, void.

**I.**

I note briefly that much of my reasoning here rests on the somewhat unique findings that the bankruptcy court made below.  The bankruptcy court declined to address the jurisdictional issues that the parties raised and denied Coney Island's motion solely on the ground that the motion was untimely.  Majority Op. at 3–4.  The court declined to address the trustee's three

other arguments. Indeed, it assumed—at least for the purpose of deciding the timeliness question—that service was deficient. It also accepted Coney Island's concession that it knew of the judgment by, at the latest, April 2016—roughly one year after the judgment was entered. But it did not rule on the trustee's arguments that service was valid and that Coney Island never suffered a denial of due process that would render the judgment void. The court found that "even when potentially void judgments are at issue," it retained its discretion to deny a motion to vacate the judgments when the motion is not "made within a reasonable time." Order Den. Mot. to Vacate, Bankr. D.60 at 1, 5.[1] It declined to inquire into whether the underlying judgment was void, voidable, or valid.

## II.

In my view, the bankruptcy court erred by resting its denial of Coney Island's Rule 60(b)(4) motion solely on timeliness grounds. As support for its order, the bankruptcy court cited our decisions in *United States v. Dailide*, *Days Inn Worldwide, Inc. v. Patel*, *Eglinton v. Loyer* (*In re G.A.D., Inc.*), and *Blachy v. Butcher* for the proposition that time limitations apply to motions to vacate void judgments under Rule 60(b)(4). *See* Order Den. Mot. to Vacate, Bankr. D.60 at 5; *see also Dailide*, 316 F.3d 611 (6th Cir. 2003); *Days Inn*, 445 F.3d 899 (6th Cir. 2006); *In re G.A.D.*, 340 F.3d 331 (6th Cir. 2003); *Blachy*, 129 F. App'x 173 (6th Cir. 2005). The court felt that these precedents establish a threshold timeliness rule even after noting that several other circuits "have declined to find that the timeliness requirement applies to Rule 60(b)(4) for void judgments." Order Den. Mot. to Vacate, Bankr. D.60 at 6. Because Coney Island had "presented the timeliness issue in its purest form" and had not presented any justification showing it was entitled to equitable relief, the court found the motion had not been filed within a reasonable time under Rule 60(c)(1). It declined to vacate the default judgment. *Id.* at 7–8. The court was wrong to do so.

---

[1]Citations to bankruptcy court documents—docket number 15-ap-90079 in the U.S. Bankruptcy Court for the Middle District of Tennessee—appear as "Bankr. D."

**A.**

Principles of due process require that parties to a lawsuit be properly served for a court to have jurisdiction to adjudicate the parties' rights. *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 353 (6th Cir. 2003), *abrogated on other grounds by Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022). Indeed, before "a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Without proper jurisdiction over the parties, a judgment is void under Rule 60(b)(4). *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995) (citing *In re Edwards*, 962 F.2d 641, 644 (7th Cir. 1992)). Because a court lacks the power to enforce a void judgment, "overwhelming authority exists for the proposition that there are no time limits with regards to a challenge to a void judgment." *United States v. One Toshiba Color Television*, 213 F.3d 147, 157 (3d Cir. 2000) (en banc). Because a void judgment is a "nullity," the argument goes, the passage of time cannot render it valid. *Id.*

Courts widely agree that the timeliness requirement in the text of Rule 60(c)(1) does not apply to a motion seeking vacatur of an allegedly void judgment for the simple fact that a legal nullity must necessarily be vulnerable to vacatur at any time. *See* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2862 (3d ed. June 2024 update) ("[T]here is no time limit on an attack on a judgment as void."); *see also, e.g.*, *Norris v. Causey*, 869 F.3d 360, 365 (5th Cir. 2017); *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 857 (7th Cir. 2011); *Sea-Land Serv., Inc. v. Ceramica Europa II, Inc.*, 160 F.3d 849, 852 (1st Cir. 1998); *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987); *Misco Leasing, Inc. v. Vaughn*, 450 F.2d 257, 260 (10th Cir. 1971); *Crosby v. Bradstreet Co.*, 312 F.2d 483, 484–85 (2d Cir. 1963); *Austin v. Smith*, 312 F.2d 337, 343 (D.C. Cir. 1962). What's more, the Supreme Court has several times appeared to assume that a defendant to a suit is "always" permitted to choose between, on one hand, ignoring judicial proceedings, risking default judgment, and then later collaterally challenging the court's jurisdiction, and, on the other hand, submitting to a court for a jurisdictional determination and being bound by that determination. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982); *see also Baldwin v. Iowa*

*State Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931). In short, until today, federal courts have long agreed that untimeliness alone cannot defeat a motion to vacate a void judgment.

1. **No caselaw establishes a binding rule that courts may deny motions to vacate default judgments solely on timeliness grounds.**

As a threshold matter, I believe we are not bound by *Dailide*, *Days Inn*, and *In re G.A.D.* because these cases do not hold that untimeliness alone can defeat a motion to vacate an otherwise void judgment. That's true for two primary reasons: (1) none of these cases establishes a binding rule of law stating that untimeliness alone is sufficient to deny a motion to vacate, and (2) none of these cases applies the timeliness rule to a motion alleging severe due process violations striking at the heart of the court's authority to exercise personal jurisdiction over a defendant.

To be sure, language in these cases points at such a rule. And we are generally bound by prior published panel decisions; this panel may not overrule another panel. *See* 6 Cir. R. 32.1(b); *United States v. Ferguson*, 868 F.3d 514, 515 (6th Cir. 2017). But we are not bound by language in a judicial opinion that—though presented as an alternative, independent holding—fails to apply the rule it purports to lay out. *See Wright v. Spaulding*, 939 F.3d 695, 701–02 (6th Cir. 2019). And because prior panels are *also* bound by existing published circuit precedent, when one "opinion of this court conflicts with an earlier precedent, we are bound by the earliest case." *Habich v. City of Dearborn*, 331 F.3d 524, 530 n.2 (6th Cir. 2003); *see also White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 241 (6th Cir. 2005). Finally, intervening Supreme Court precedent relevant to the question before us permits us to revisit findings made by earlier panels. *See Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 720–21 (6th Cir. 2016). Intervening precedent here—specifically, *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010)—clarifies what kinds of judgments are void and when Rule 60(b)(4) applies. *See also Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 601 (6th Cir. 2012).

To the extent that *Dailide* purports to establish a general rule about untimely motions to vacate, it does not actually apply that rule. Indeed, the *Dailide* panel "actively applied," *see Wright*, 939 F.3d at 701 (emphasis omitted), an earlier rule from an earlier case by explicitly reaching the question of whether the underlying judgment was void. *Dailide*, 316 F.3d at 618–

19; *see also Antoine*, 66 F.3d at 110 (remanding to consider whether the movant had proper notice of the pending default judgment). The panel failed to apply the rule it purportedly announced. *See Wright*, 939 F.3d at 701–02. Just because "a court presents a statement as an alternative holding does not necessarily mean that the statement is entitled to adherence as binding precedent." *Freed v. Thomas*, 976 F.3d 729, 738 (6th Cir. 2020). The fact that *Dailide* failed to apply the broad timeliness rule that it laid out provides the strongest evidence that the "rule" is no rule at all.

*Antoine v. Atlas Turner, Inc.*, published roughly eight years prior to *Dailide*, instead provides the proper governing rule. *Antoine* directly addressed the threshold voidness Rule 60(b)(4) inquiry even where the movant had waited more than five years to seek vacatur of the judgment. *Antoine* held that if an underlying judgment is void, it would be a per se abuse of discretion for a district court to deny a motion to vacate that judgment. 66 F.3d at 108 (citing for support *Indoor Cultivation Equipment*, 55 F.3d at 1317). *Antoine* then applied that rule, remanding to the district court to determine whether the movant had received actual notice of the default judgments prior to the court entering them. *Id.* at 109–10. *Antoine* emphasized that a judgment is "void under 60(b)(4) 'if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.'" *Id.* at 108 (quoting *In re Edwards*, 962 F.2d at 644). The *Dailide* panel could not, per *Antoine*, affirm denial of a Rule 60(b)(4) motion without any assessment of whether the underlying judgment was void, voidable, or valid. So that's exactly what *Dailide* did, and that's the only holding that should bind us. Per *Antoine*, the bankruptcy court here should have resolved the question of whether the underlying judgment was void, voidable, or valid.

Later precedent confirms that untimeliness alone cannot be the basis for denying a motion to vacate a void judgment. In *Espinosa*, the Supreme Court explained that "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." 559 U.S. at 271 (citing with approval, among others, 11 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 2862 (2d ed. 1995 & Supp. 2009), which affirms that there is no time limit on motions to vacate void judgments).

Coney Island alleges the exact kind of error that falls into these narrow categories. If there were any doubt about the continuing validity of *Dailide*'s holding, *Espinosa*—and a later Sixth Circuit opinion, *Northridge Church*, clarifying *Espinosa*'s effect on the interpretation of Rule 60— underscores that it does not control here. *See Northridge Church v. Charter Twp. of Plymouth*, 647 F.3d 606, 611 (6th Cir. 2011).

> **2.** **No caselaw addresses whether a court may deny a motion to vacate where the judgment is void from its entry for lack of personal jurisdiction.**

*Dailide*, *Days Inn*, and *In re G.A.D.* also do not apply to the facts of this case. Specifically, no case addresses the question of whether a federal court may deny a motion to vacate where the court declines to determine whether the judgment was void at its entry for a lack of personal jurisdiction. In this case, the bankruptcy court left unresolved the question of whether the judgment was void because service was deficient and whether the court lacked personal jurisdiction over Coney Island. *See Omni Cap. Int'l*, 484 U.S. at 104; *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999); *Antoine*, 66 F.3d at 108. *Dailide* and *In re G.A.D.* instead involved *subject-matter* jurisdiction; *Days Inn* found that the court *possessed* personal jurisdiction over the defendant, even though not all key procedural requirements were satisfied.

The distinction is key, for personal jurisdiction is an "essential element" of a court's jurisdiction, "without which the court is 'powerless to proceed to an adjudication.'" *Ruhrgas*, 526 U.S. at 584 (quoting *Emps. Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937)). The requirement that courts possess personal jurisdiction over the parties whose rights are being adjudicated represents a "restriction on judicial power" and is framed as a "matter of individual liberty." *Ins. Corp. of Ireland*, 456 U.S. at 702. The Supreme Court has been quick to correct any notion that personal-jurisdiction requirements are in any way less important than subject-matter jurisdiction restrictions. *See Ruhrgas*, 526 U.S. at 584. Indeed, in many cases, an "impediment to subject-matter jurisdiction" might rest "on statutory interpretation, not constitutional command." *Id.* The personal-jurisdiction limitation, however, typically reflects fundamental constitutional principles of due process. *Id.* Like most individual rights, a court's lack of personal jurisdiction can be waived, but necessary to that waiver is the party's express or implied consent—implied through proper compliance with due-process notice requirements—

to the court's jurisdiction. *See Ins. Corp. of Ireland*, 456 U.S. at 703; *Espinosa*, 559 U.S. at 271. And before "a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l*, 484 U.S. at 104; *see also Espinosa*, 559 U.S. at 271 (clarifying that Rule 60(b)(4) applies where a judgment is premised on either a jurisdictional error or a due-process violation). The personal-jurisdiction requirement is rooted in fundamental due-process principles, ensuring that parties to a suit are legitimately subject to a court's lawful authority before the court adjudicates their rights. *See Ruhrgas*, 526 U.S. at 584.

Both *Dailide* and *In re G.A.D.* concerned determinations of a court's subject-matter jurisdiction. Neither purported to apply any timeliness bar to a motion challenging a court's personal jurisdiction; *In re G.A.D.* applied no timeliness threshold at all. *See Dailide*, 316 F.3d at 617–19; *In re G.A.D.*, 340 F.3d 334–37. In contrast, *Days Inn* did address personal jurisdiction. But in that case we found that "substantial compliance" with a state summons statute, paired with counsel's concession at oral argument that the defendant had received proper service two days prior to the entry of default judgment, served as "a sufficient indication" of the party's "acceptance of proper service" in that case "so as to confer personal jurisdiction on the district court." *Days Inn*, 445 F.3d at 904–05. In other words, we found the court *possessed* personal jurisdiction *prior* to the default judgment—squarely at odds with the facts of this case. Here, the questions of (1) whether service was deficient and (2) whether Coney Island lacked all notice of the pending default judgment are unresolved. So *Dailide*, *In re G.A.D.*, and *Days Inn* do not govern the outcome here.

Of the precedent before us, *Antoine* most closely governs. In that case, we remanded to the district court for a determination of whether the defendant had received actual notice of the default judgments prior to their entry. *See Antoine*, 66 F.3d at 110. I would follow *Antoine*'s lead. On the record before us, we know only that Coney Island stipulated to actual notice a year *after* the date of the judgment. So I would remand for the bankruptcy court to determine whether Coney Island actually received notice—or whether service was sufficient—such that the judgment was not void. *Antoine* governs. *Dailide*, *Days Inn*, and *In re G.A.D.* do not.

**B.**

I believe the cases on which the trustee and the majority rely do not bind us here. But regardless of the precedential landscape before us, I think the unbounded timeliness rule laid out in *Dailide* and adopted by the majority here is misguided. Every other federal court to address this issue has come to the opposite conclusion that the majority does here: each has held that a court may not deny a Rule 60(b)(4) motion to vacate a judgment solely because the motion is untimely.

As the majority notes, one reading of Rule 60(c)(1)'s timeliness requirement supports the conclusion that the requirement applies to motions under Rule 60(b)(4). *See* Fed. R. Civ. P. 60(c)(1) ("A motion under Rule 60(b) must be made within a reasonable time . . . ."). But since the rule's most recent substantive amendment, federal courts have long understood it to reflect a history of equity "shrouded in ancient lore and mystery" that suggests courts must possess the authority, regardless of a motion's timeliness, to vacate a wholly void judgment. *See* Fed. R. Civ. P. 60(b) advisory committee's note to 1946 amendment. Indeed, as the majority opinion notes, "when Rule 60 was amended to its present substantive form, there was a well-established rule that void judgments could be vacated at any time." Majority Op. at 8.

In the majority's eyes, the firmly settled existence of that rule matters not. In its reading, Rule 60(c)(1)'s failure to describe that rule in the text of Rule 60 constitutes a *rejection* of the rule. But the use of the word "reasonable" in the text of Rule 60(c)(1) is itself strong evidence that the Advisory Committee did not intend to upend the traditional rule. As applied to facially void judgments, a "reasonable" time limit might very well be no time limit at all. Instead, a "reasonable" time limit might apply to *voidable* judgments, or to judgments that are, on their face, valid. The text of Rule 60(c)(1) supports either interpretation. The Committee affirmed numerous times that its construction of Rule 60 was not intended to take away preexisting remedies. *See* 3 Proceedings of the Advisory Committee on Rules for Civil Procedure, Mar. 25–28, 1946, at 616 (statement of Hon. George Donworth) ("I don't think any of us would vote for anything which we thought would take away any present remedy."); *see also id.* at 615 (statement of Robert D. Dodge). Because the Committee explicitly incorporated traditional

equitable principles into Rule 60, I believe the more likely meaning is that the rule permits attack on facially void judgments at any time.

What's more, the Supreme Court seems to agree. At the time of the amendment, the Court—like the Advisory Committee—understood the rule to be more permissive than the requirements for the "old common law writs." *Klapprott v. United States*, 335 U.S. 601, 614–15 (1949). In *Klapprott*, the Court explicitly assumed that no "definite time limit," *id.* at 624 (Reed, J., dissenting), applied to Rule 60(b)(4) motions. The Court proceeded instead to determine the merits of whether the judgment at issue was in fact void under Rule 60(b)(4). *Id.* at 609–13. Further, more recent Supreme Court precedent suggests that the Court understands Rule 60(b)(4) to permit attack of void judgments at any time. *See Espinosa*, 559 U.S. at 271 (citing approvingly several sources, including *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661–62 (1st Cir. 1990) and 11 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2862 (2d ed. 1995 & Supp. 2009), that restate the traditional rule that void judgments are always susceptible to vacatur). And since Rule 60's amendment, other federal courts have reaffirmed many times the simple principle that "the mere passage of time cannot convert an absolutely void judgment into a valid one." *Jackson v. FIE Corp.*, 302 F.3d 515, 523 (5th Cir. 2002); *see also Precision Etchings & Findings, Inc. v. LGP Gem, Ltd.*, 953 F.3d 21, 23 (1st Cir. 1992) ("A default judgment entered by a court which lacks jurisdiction over the person of the defendant is void and may be set aside *at any time* pursuant to Fed. R. Civ. P. 60(b)(4)." (citation omitted)). Given the truism that a "void judgment is a legal nullity," *Espinosa*, 559 U.S. at 270, it seems clear that—to avoid the injustice inherent in enforcement of a legal nullity—Rule 60(c)(1) must not permit courts to deny motions to vacate void judgments solely on timeliness grounds.

If the judgment here was in fact entered without valid service or sufficient notice to Coney Island, then it was entered with a "total want of jurisdiction." *Id.* at 271 (cleaned up) (quoting *Boch Oldsmobile, Inc.*, 909 F.2d at 661). Such a judgment is void, a legal nullity, and unenforceable. Indeed, as the New York bankruptcy court noted, service here seems facially deficient per the text of the bankruptcy rule. *See* Fed. R. Bankr. P. 7004(b)(3) (permitting service upon a corporation by mail addressed "to the attention of an officer, a managing or

general agent, or to any other agent authorized by appointment or by law to receive service of process"). If true, allowing such a judgment to stand flies in the face of longstanding principles of equity and due process.

\* \* \*

Before exercising power over the parties to a legal action, a court must abide by certain restraints on its authority to adjudicate individuals' rights. Subject-matter and personal jurisdiction limitations act to protect individual liberty, uphold faith in the rule of law, and bolster the legitimacy of a judiciary that wields otherwise significant power. Those fundamental limitations manifest the deep responsibility that courts have to administer justice fairly and dispassionately. Enforcement of a legal nullity is a true injustice. Where a judgment is void, it cannot stand.

I respectfully dissent.